M. L. BARRETT, Respondent, v. ROBERT H. KERN, Appellant.

St. Louis Court of Appeals. Argued and Submitted March 30, 1909. Opinion Filed May 11, 1909.

1. **TRIAL PRACTICE: Payment: Burden of Proof.** The burden of proving payment rests on the party alleging it.

2. **APPELLATE PRACTICE: Conclusiveness of Trial Courts' Finding.** A finding supported by the positive testimony of a party, and merely contradicted by the uncertain testimony of the adverse party having the burden of proof, is binding on the court on appeal.

3. **TRIAL PRACTICE: Accord and Satisfaction: Burden of Proof.** The burden of establishing an accord and satisfaction rests upon the party who pleads it..

4. **ACCORD AND SATISFACTION:** Nature of. It is of the very essence of accord and satisfaction that it finally and definitely close the matters covered by it. In law, it is a new contract, founded on a new consideration, and, to be enforceable, it must have all the essential elements of a contract, among them mutuality and certainty.

5. ————: **Facts.** Plaintiff and defendant, upon casting up their accounts, agreed that defendant should pay plaintiff $2,284.42; but defendant contended he owed only $1,200, and plaintiff agreed that if defendant produced receipts or checks showing he owed the latter amount, he would refund the difference. The interest charge also was left open for future adjustment. Defendant paid plaintiff $2,284.42 and on the same day plaintiff rendered a bill to defendant for interest in the amount of $283.02. Defendant remitted $200, and subsequently sent a check for the balance, upon which was endorsed "full all demands." With this check he enclosed a letter stating "I enclose check for $83.02, assuming if eventually I am right you will return to me." Plaintiff in reply wrote: "I have yours with check for $83.02, which amount I think will be found correct. At all events it is open for correction." Subsequently, plaintiff claimed an additional $1,000 was due from defendant. *Held*, that the finding of the trial judge, that neither the transaction whereby it was agreed plaintiff should pay $2,284.42, nor the words "full all demands" on the check proved an accord and satisfaction, is justified by the evidence and binding on this court.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

Affirmed.

*John A. Harrison* and *Samuel G. Ray* for appellant.

(1) The entire evidence showed that appellant had paid respondent the full amount due on the contracts sued on and there was absolutely no evidence to support the judgment in respondent's favor. (2) The undisputed evidence shows an accord and satisfaction duly entered into and carried out by appellant and respondent by which the latter is forever estopped from recovering any sum from appellant. School Board

v. Hull, 72 Mo. App. 403; Perkins v. Headley, 49 Mo. App. 556; McCormick v. St. Louis, 166 Mo. 315; Andrews v. Stubbs, etc., Co., 100 Mo. App. 599; Deutmann v. Kilpatrick, 46 Mo. App. 624; Traux v. Miller, 48 Minn. 62; Battle v. McArthur, 49 Fed. 715; Tansey v. Railroad, 90 Mo. App. 101; Maack v. Schneider, 51 Mo. App. 192; Jarrett v. Morton, 44 Mo. 275; Pollman v. City, 145 Mo. 651; McCall v. Nave, 52 Miss. 494; Ogburn v. Hoffman, 52 Ind. 439; Lightfoot & Son v. Hurd & Co., 113 Mo. App. 612; Bahrenburg v. Fruit Co., 128 Mo. App. 526.

*Bishop & Cobbs* for respondent.

(1) No instructions or declarations of law having been asked, the finding of the trial court will be sustained, if there is any theory or substantial evidence on which it can be sustained. Every fair presumption will be indulged in favor of the judgment. (2) The burden is on the defendant to prove either payment or settlement. Griffith v. Creighton, 61 Mo. App. 1; Oil Well Supply Co. v. Wolfe, 127 Mo. 616. (3) No settlement agreement has been shown. "Accord and satisfaction is the substitution of another agreement between the parties, in satisfaction of the former and the execution of the latter." Swofford D. G. Co. v. Goss, 65 Mo. App. 55. (4) Where the amount due is fixed or ascertainable, the payment of part of it will not constitute a settlement of all. "A transaction which consists only in the payment of a smaller sum than is unquestionably due, and which has no other element of accord in it, is not a satisfaction of the debt, even though accepted as such at the time." Wetmore v. Crouch, 150 Mo. 671; Riley v. Kershan, 52 Mo. 224. (5) Mutual mistakes will always be corrected, even after a supposed settlement. Nothing can be settled which is not in the minds of the parties at the time. The omission of $1,000 in calculating the amount due, could be corrected, even if a settlement agreement had

been‛ made. No settlement agreement was made, or even intended, by either party.

STATEMENT.—In the years 1900 and 1902, by two several contracts, defendant bargained for the purchase of two tracts of land in Macon county, one comprising 120 and the other 180 acres. The total price to be paid for the two tracts, so far as concerns this case, was $8,200—$2,200 for the one, $6,000 for the other. Both tracts were incumbered by mortgages and under the terms of the contracts of sale and agreements of the parties, $2,715.58 of the total price ‛was to be paid to one Compton, and $5,484.42 was to be paid to the plaintiff. Pending the payment of the mortgages and of the purchase price, deeds were executed and placed in escrow, and defendant commenced payment on the purchase price. There is no question that he paid $1,000 due Compton on the 120 acres and $1,715.58 due him on the 180 acres, and that he paid plaintiff $4,484.42 on the two tracts, paying him $1,000 March 12, 1902, $1,200 on July 14, 1902, and $2,284.42 on December 28, 1904,—all these exclusive of interest. The dispute arises over the question of whether he had paid plaintiff $1,000 more, the contracts, beyond room for doubt, requiring payment to plaintiff of a total of $5,484.42, exclusive of interest. It‾ is over this $1,000 that the present controversy has arisen. Defendant refusing to pay, plaintiff brought suit against him for the $1,000 and interest thereon, at the rate of 7 per cent per annum, from March 1, 1902, that being the date payment of the whole of the $8,200 fell due, it being agreed that if payment was not then made in full, the amounts then unpaid were to bear interest at the rate of 7 per cent per annum. Defendant pleaded in answer to the petition of plaintiff, which set up the above facts in detail, first, a denial of indebtedness in any sum whatever; second, that before action brought, he had discharged and satisfied plaintiff's

claims by payment; third, that in September, 1903, he and plaintiff had an accounting and entered into an agreement as to the amount which remained due on the contract sued on by plaintiff; that it was then agreed between them that the amount remaining due on the contracts was $1,200, with interest; that about December, 1904, he offered to pay plaintiff this $1,200, with interest, "as had been agreed was due to plaintiff, but that at said time plaintiff contended that defendant owed him in addition thereto the sum of one thousand dollars and interest thereon, amounting in all to two thousand, two hundred and eighty-four and 42-100 dollars with interest;" that he and plaintiff then and there agreed "that if defendant would pay plaintiff said sum of two thousand, two hundred and eighty-four and 42-100 dollars and interest, that defendant should have a reasonable time to examine his papers to see if he could find a check as receipt showing that he had paid said additional one thousand dollars demanded by plaintiff, and if defendant found that he had paid said additional $1,000, then plaintiff would repay the said $1000 and interest and if defendant did not find said check or receipt then said sum of $2,284.42, with interest, should be accepted as the full settlement of all indebtedness due plaintiff from defendant under said contracts now sued on by plaintiff." Pleading payment of the $2,284.42, defendant avers that the interest claimed due thereon from defendant was $283.02; that he was unable to find the check or receipt and paid the interest as follows: $200 April 8, 1905; $83.02, May 19, 1905, "as agreed in full settlement of all of plaintiff's demands and of all moneys claimed by plaintiff as aforesaid. And defendant states that said sum was so accepted by plaintiff in full settlement and in full payment of all his demands and claims against defendant."

The reply was a general denial.

The trial was before the court, each party waiving a jury. At the trial of the cause the contracts above referred to being in evidence, as before stated, there was no controversy over the fact that they called for the payment of $8,200, and that up to about December 29, 1904, $2,715.58 had been paid to Compton and $4,482.42 had been paid to plaintiff under the two contracts. It was also practically beyond dispute that in September, 1903, both parties assumed that there was only $1,200 still due plaintiff, although there was no evidence tending to prove that there was then any such agreement as to that amount as to bind either, and that impression apparently was in the minds of both parties up to December 20, 1904. The real contention and clash of testimony occurred over what took place at and after December 20, 1904. It appears from the testimony in the case that along toward the middle of the year 1904, the defendant, having made arrangements to borrow money on the two tracts, desired to close up the transaction with plaintiff and have the tracts released from the mortgages which still remained unsatisfied of record, and to secure the delivery of the deeds to him by plaintiff. There was a good deal of delay over this, and finally defendant, on December 20, 1904, went to Chicago from St. Louis and there met plaintiff, and appeared to have then learned for the first time, that instead of plaintiff claiming $1,200 as still due, he claimed that considerably more remained unpaid under the contracts. Right here the conflict in testimony arose, between the defendant on the one side, and plaintiff and a Mr. Aldrich, a young man, who was acting as his bookkeeper or cashier, on the other. When the defendant reached Chicago and went to the office of plaintiff he was introduced to Aldrich by plaintiff as the one who would go over with defendant the accounts between plaintiff and defendant. Whereupon the defendant and Aldrich sat down in a room of the office of plaintiff, and went over the contracts and ac-

count which Aldrich had kept himself, covering the payments to February, 1903, the account from that date down being shown on the books of plaintiff's firm with which Aldrich seems to have been familiar.

It is impossible to reconcile the versions given by plaintiff and Mr. Aldrich on the one hand and defendant on the other, as to exactly what took place and what was agreed on at this interview in Chicago, further than that it is very evident that at the time all of the parties proceeded upon the assumption that up to that date $5,915.58 had been paid on the $8,200, and the question between them was whether defendant then owed plaintiff $2,284.42 or $1,284.42. After a good deal of contention, and as defendant was compelled to have the delivery of the deeds in order to carry out contracts he had made for borrowing money on the tracts, it was agreed substantially between the parties that defendant was to pay this $2,284.42, leaving it open for him to find or produce receipts or checks, if he could, showing the payment of the difference between the amount and $1,200, which he admitted owing, and also leaving open for further calculation the interest to be figured up later, the plaintiff on his part agreeing that if it was found that $1,200 was the correct amount, he would refund to plaintiff whatever difference there was between that and the amount plaintiff paid him. That defendant at that time owed plaintiff more than this $2,284.42 does not appear to have been then in the minds of either party as far as the evidence in the case shows. At the close of their conference in Chicago, the defendant, while in the office of plaintiff in Chicago, dictated this letter, addressed to the cashier of the bank at Macon, and delivered it to plaintiff to be sent on by plaintiff with the papers, the letter being dated December 20, 1904:

"John Scovern, Macon, Mo.

"Dear Sir:—Mr. M. L. Barrett, of Chicago, holds certain notes secured by deeds of trust on certain lands of mine in Macon county, Missouri. In computing to-day, he and I are uncertain as to whether the amount is exactly $2,284.42 or not, but he and I have agreed that this amount shall be paid him through you and should it develop that $1,000 of this amount has been paid by me, Mr. Barrett and I will settle this between ourselves.

"These three notes Mr. Barrett will mail to you and Mr. Hicks is authorized to pay you that sum of money on account of Mr. Barrett that is, $2,284.42 upon payment of which Mr. Barrett I assume will direct you to acknowledge satisfaction of the record.

"Please do this.

"I give this letter to Mr. Barrett to mail to you with his papers.

"Yours respectfully,
"R. H. KERN."

On his return to St. Louis, the papers evidently not having been sent on to Macon by plaintiff, defendant wrote him this letter:

"St. Louis, Mo., December 23, 1904.

"Dear Mr. Barrett:—I enclose letter from which you can see my position at Macon. Candidly, I don't see why you don't do what you agreed with me Tuesday. You can bet your life I would keep my word with you. If you owe me a thousand or *vice versa* I won't worry, either is perfectly good. My rheumatic ankle holds me here. Have asked Mr. Murison to see you for me Saturday A. M. Now, Mr. Barrett, just hold this as my obligation to pay you any sum we find on final investigation I owe you, but please send the notes Saturday. I hope to be able to go to farm Tuesday and look into it.

"If you won't do anything at least please notify me by phone at my expense. No. Main 4825.

"Respectfully,

"R. H. KERN."

Plaintiff does not appear to have answered this letter until December 29th, when he wrote defendant as follows:

"Mr. R. H. Kern, St. Louis, Mo.

"Dear Sir:—Yours of the 23rd came to hand a little late and after the documents in the matter mentioned had been forwarded by express to Macon. I have the bank's receipt for them and their remittance as well. The young man you met has not yet reached a point where he is satisfied that our figuring is correct. There is no doubt as to the $1,000, but it appears that in his computation he left out the interest on the $1,000, which has been running for several years. In a few days, if we find it has not been computed, we will send you a statement of the interest and of course if you find we are correct you will send me your check.

"Yours truly, etc."

It was admitted that the remittance referred to was the $2,284.42. This amount of $2,284.42, therefore, was not received until this twenty-ninth of December, 1904, on which date plaintiff's firm also wrote defendant as follows: "We have this day charged your account as per memorandum below. Yours respectfully, M. L. Barrett & Co." The memorandum reads as follows (of date December 29, 1904):

"To interest on $2,284.42 at 7 per cent
from 3-1-04 .................. $451.02

"Less interest on $1,200 at 7 per cent
from 6-1-02 to 6-1-04 .......... 168.00
_____

$283.02

"In accordance with agreements of
May 12, 1900, and March 1,
1902."

On April 8, 1905, defendant remitted to plaintiff a check, payable to his order, for $200, evidently on this interest account as set out in the memorandum of December 29th. On April 26th plaintiff wrote defendant this letter: "Just because in the hurry of business I assume you have forgotten it, I enclose a statement for the balance of the interest. I shall be glad to receive your check for the amount of it;" and along with this letter was enclosed a statement as follows:

"Chicago, 4-26-05.

"R. H. Kern, St. Louis, Mo.
"In account with M. L. Barrett, 219 Lake St.,
Dec. 29-04, Int. due ..........$283.02
April 2, by ck. ............... 200.00

Bal ...... .. ...... ......        83.02"

On May 19th defendant sent plaintiff a check as follows:

"St. Louis, 5-19-1905.   No. ......
"The National Bank of Commerce in St. Louis.
"Full all demands."
"Pay to the order of M. L. Barrett ............$83.02.
"Eighty-three ...................... 02-100 Dollars.
"R. H. KERN."

This check was enclosed in a letter from defendant to plaintiff, dated May 18, 1905, reading as follows:

"Dear Sir:—Have never yet gotten report from banks. I enclose check for $83.02, assuming if eventually I am right you will return to me. I thank you. If you are right, how on earth were we so mistaken for years.

"Yours,
"R. H. KERN."

On receipt of this letter plaintiff wrote defendant the following:

"May 22, 1905.

"Mr. R. H. Kern, St. Louis, Mo.

"Dear Sir:—I have yours of the 19th with check for $83.02, which amount I think will be found correct. At all events, it is open for correction. I am obliged to plead guilty to an inability to read the last two lines of your letter. I can get as far as 'if you are right how on earth.' The next sentence I cannot read and do not know whether it is Greek or Hebrew. Try it again, that I may learn the thought in your letter.

"Yours truly," etc.

The plaintiff testified, referring to this check of May 19th, that he had no recollection of it and had certainly not noticed the words on it, "Full all demands." He admitted it had been cashed through his bank. It was in evidence in the case that it was not until about June or July, 1905, that plaintiff discovered, as he claims, that there was $1,000 still due on the land contracts, which he testifies was first called to his attention by his brother-in-law, Mr. Potts, who was the original owner of the two tracts purchased by defendant. Whereupon he had the accounts gone over again by Mr. Aldrich and as the result of that, appears to have called the matter to the attention of the defendant. Defendant testified that he first heard from plaintiff that he claimed $1,000 still due, July 29, 1905. The letters which plaintiff and Aldrich wrote to defendant were all excluded by the court under the objection that they were "self serving," but the only letter in answer to this correspondence which defendant appears to have written, whether to Aldrich or to plaintiff, is not very clear, was introduced and read in evidence and is as follows:

"Oct. 8, 1905.

"Dear Sir:—In answer to your several letters I have simply to say that I have paid the amount you claim. You have now rendered me two statements and when acting on the first one, I wanted to take up what you said was due and you claimed that you had made a mistake and you went over the accounts very thoroughly and I paid you the amount you then claimed was due.

"Several months afterward you came claiming a mistake. I never felt but what the original statement you gave me two years ago was correct, but inasmuch as I could not place my hands on my memoranda at that time, and had negotiated a loan on the property, I simply paid it because of my inability to get reports from the several banks with which I had done business.

"I infer from your letters that you have no memory about it at all, but are dependent upon the statements made you from time to time by your bookkeeper.

"Yours truly,
"R. H. KERN."

This is substantially all the testimony on the issue of accord and satisfaction. On the issue of what amount had been actually paid, plaintiff testified in the most positive and unequivocal terms that the only amounts paid to him on account of the $5,484.42 due him was the $1,000 paid March 12, 1902, the $1,200 paid July 14, 1902, the $2,284.42 paid December 28, 1904, together with interest paid at various dates. That left owing him on account of the $5,484.42 due him under the contracts $1,000.00 and interest. Aldrich, who had been bookkeeper for plaintiff's firm during the period of the payments until February, 1903, and had kept the private books of plaintiff, testified that there was no entry whatever on the books showing the payment of this $1,000, and that while he was with plaintiff he had entered up all payments made by defendant on this account of which he had any knowledge.

Barrett v. Kern.

On the part of defendant his testimony as to the payment of the full amount of $5,484.42, due plaintiff, was substantially as follows: Asked if he had made the payments called for under the contracts up to the twentieth of December, 1904, he answered: "Yes, sir; I paid on these matters as I thought all but $1,200." Asked how he made the payments, he said: "Well, it is impossible—I had made them by checks or drafts one or the other. Sometimes it may have been a check. Sometimes it may have been a draft, as far as I recollect;" had paid Compton his $2,700 and interest. Asked to state what he had paid prior to the meeting in Chicago on December 20, 1904, he answered: "My recollection is I have paid something over $4,000 to Mr. Barrett. I have forgotten just the amounts in excess of that, $4,200 perhaps." His counsel, suggesting to him that he had made the payments by checks, asked him what had become of the checks. He answered: "That, I don't know, sir. They have become mislaid. I never had a bookkeeper in my life on anything, and these checks, as far as I know, are lost. I haven't been able to find them. I can't find the checks for the payment mentioned, except the $2,-284.42." (This, of course, referring to the $2,284.42 paid December 29, 1904, and this latter, as he afterwards stated, was paid not by check but by draft on the Macon bank.) Asked how he accounted for the fact that he did not produce the checks which he had sent, he answered that it was simply because he had no system of keeping them. Some of the papers in the case are lost and in that way, he said, he had no memorandum in reference to this, nor, would he suppose, in reference to anything; is not in the habit of keeping his check very long; has no system about it; keeps no books; sometimes makes a memorandum, sometimes jots down something as payments being made and things like that. Asked if he had been in the habit of drawing checks from a check book in his office and keeping stubs to show the checks

141 App.—2

issued, he answered that he did both ways, sometimes drew from a check book and kept a stub and marked what it was for; time and again would go to the bank, pick up a random check there or draw a draft for whatever the amount might be and hand it to the bank payable to the bearer; has no rule about the time for keeping checks, sometimes finds one that is ten years old and sometimes looks for one that is a year old and cannot find it; has made search for the checks covering this matter and has not been able to find a single one of them, except a few produced at the trial. (These are all interest checks.) During the time covered by the transaction did business with four banks in Macon and three banks in St. Louis. Asked by his counsel how much money he had paid Mr. Barrett on these transactions, he answered: "My impression is that I have paid—" Counsel for plaintiff, interposing the objection that they wanted facts and not impressions, the court, over the objection of that counsel, allowed witness to proceed with his answer which he did as follows: "Well, I felt sure I paid Mr. Barrett all that was due him except this thousand dollars that was due him when we met in Chicago. I was very confident at that time that I paid him that sum, but I have searched my records, and being unable to find any memorandum of having paid him that, I of course am not willing to swear that I had paid Mr. Barrett that positively. It is only my impression that I had." That is, up to that time, but as he testified, he had since paid the $1,000 which was in dispute at Chicago, and that was not controverted, this $1000 being included in the $2,284.42 then arranged for. Defendant further testified that he had not kept with any regularity, or pretended that he had, copies of all the correspondence between himself and Mr. Barrett and had produced all he could find.

On cross-examination plaintiff states that under the contracts he had agreed to pay $2,200 for one and

$6,000 for the other of the two farms, making a total of $8,200; that the incumbrances on them were held by a Mr. Compton and by Mr. Barrett, Compton's amounting to $2,700, the balance going to Mr. Barrett. That is to say, the amount he stated as going to Barrett was $5,484.42, with interest added. Defendant testified that all this was in writing. Asked when he had made the first payment on this $5,484.42 to Barrett, he answered: "That, I do not recollect." Asked how much the first payment was, he answered: "Well, my recollection is that it was something like a thousand dollars. I am not sure about that." Asked about the date that it was paid, he answered: "I think I made a payment in the spring of 1902. That is my recollection." That was the first payment, as he recollects it, and it was $1,000, and, according to a paper which is produced, his recollection is, that it was made during the month of March, 1902; doesn't know whether that was paid by check or draft; has neither and no record of it; has looked for it but cannot find it. Asked when he made the second payment, he answered: "Well, my recollection is that I made another payment of something like $1,200 during that summer; I don't remember what time." Reminded that other witnesses had said that it was made in July, 1902, he answered that he assumed that was correct. Asked if he did not have a check for that, he said that he did not recollect, might have it at his office but did not have it with him in the courtroom. This $1,200 was the second payment. Asked when he made the third payment he answered: "That, I do not remember." Asked, "do you remember to have made a third payment?" he answered: "Yes, sir; it is my recollection that I made a third payment." Asked when that was made, he answered: "Well, I don't know when it was made." Asked how he knew it was made, he answered: "I don't know it was made, any more than looking through my memorandum from time to time I find I have charged myself with having paid a thousand dollars additional

sometime between that payment in July and a year afterwards." Asked if he had the memorandum with him, he answered that he had not, whereupon, on motion of counsel for plaintiff, all the part of the answer about looking through his memorandum was stricken out. Asked if he had with him any evidence whatever of a payment made between the time that he paid the $1,200 and the time he paid the $2,284.42, he answered: "No, sir; I have nothing except a memorandum, which I have not been able to place my hands on, and which the court has ordered stricken out. I have nothing, I can't find that." Asked if he could, of his own knowledge and memory, independent of the memorandum which he had not produced, testify that he made any payment between these times, he answered: "I am satisfied I made the payment, . . . Yes, sir; my memory is I did make the payment. You asked me how I knew it, as I understood you." Asked when he made it, he answered: "I don't know just what time. Sometime between this payment of July, 1902, and 1903, as I recall it." Reminded that the next payment was in December, 1904, he answered that he understood that, and asked again to state when he paid any other sum than the three sums already mentioned, he answered: "I have told you that I cannot fix the time only as between July, 1902, and the year following." Asked how much it was he answered: "A thousand dollars, as I recall it." Asked how it was paid, he answered: "That I do not remember. By draft or check, as I usually paid them. I don't know. I can't find the check." Asked if he had any memorandum or books in which he had made the payments he said: "Yes, sir; I had one; and I told you that I lost that; I am not able to find it;" was not able to produce it at the trial. Asked when he had last seen this memorandum, said: "I don't remember that;" recalls running over papers when he and Mr. Barrett had agreed on the $1,000 in September, 1903, and recognized the fact that he had made these payments. He

was asked if he was willing to swear absolutely that he had paid that $1,000. He answered: "Yes, sir, I am willing to swear that I paid that $1,000," but repeats that he doesn't know when he paid it; doesn't remember how he paid it; doesn't remember whether he sent it by letter; doesn't remember whether he took it personally. Asked, since plaintiff in the case had testified positively that he had not received any other than the three payments, one for $1,000, another for $1,200, and the last for $2,284.42, whether it might not be possible that he was mistaken about having paid that other $1,000 he answered: "I don't think it would be rendered impossible, because Mr. Barrett might not remember it, if that is what you are asking." Asked if Mr. Barrett did not receive it, it might have been possible that he mailed it and Mr. Barrett had not received it, he answered, that that might be possible; he didn't know about that. Asked if he had any receipt from Mr. Barrett for that $1,000, he answered: "No, sir; nor have I any receipt for the thousand dollars, or any receipt for the twelve hundred dollars that I know of;" has no letter from Mr. Barrett acknowledging the receipt of any payment made him on the principal sums; has no check or evidence whatever of the payment of that $1,000; had paid the $2,284.42 through the bank at Macon and that was the last payment he made. The $1,000 was due Mr. Barrett and not to any one else and if he did not receive it, "it is still due him, of course," said defendant; did not recall being in Chicago with $1,000 in money, although he may have been. Asked if he had gone to the various banks with which he was doing business at the time and checked over with them to see whether or not he had paid out $1,000 that he was not able to account for along about the time he said he had paid this $1,000, he said he had not.

On redirect examination, defendant being asked as to what thousand dollars he meant in the letter to Barrett of December 23, 1904, by the expression, "If you

owe me a thousand or *vice versa* I won't worry, either is perfectly good," he stated that it referred to the thousand dollars that he and Barrett had agreed on in Chicago in addition to the $1,200 that he (defendant) admitted at that time as owing to Barrett.

It is to be borne in mind that the thousand dollars involved in this suit and the testimony relating to it is not the thousand dollars that was under dispute at Chicago, December, 1904, the testimony all relating to a thousand dollars claimed to be due outside of that amount.

No declarations or instructions were asked by either party or given by the court. The court found for plaintiff and entered up judgment in his favor for $1,-367.49. A motion for new trial was duly filed, overruled and exceptions saved, and defendant appealed in due form.

REYNOLDS, P. J. (after stating the facts).— I. Counsel for defendant contend that there is absolutely no evidence to support the judgment in favor of plaintiff on the issue of payment. We have accordingly read all the evidence, as set out in the transcript, and are forced to the conclusion that this contention cannot be sustained.

The burden of proving payments rests on defendant. Griffith v. Creighton, 61 Mo. App. 1, l. c. 4, is one of the many cases so holding. He has not met it.

It was said by counsel for plaintiff, during the course of an argument over certain testimony, that the defendant, Mr. Kern, "would be the last man, if he was convinced that that thousand dollars had not been paid at that time, to dispute it." We have set out substantially the testimony given by defendant as to the fact of payment, and accepting in full the endorsement of counsel for plaintiff of the high character of Mr. Kern, we are compelled to say, that his own testimony falls far short of being a positive and unqualified statement

that he has paid the amount called for under the contracts. Clearly, as a highly conscientious man, he would not swear to a matter in unequivocal terms, as to which we was not absolutely sure, and he did not do so. His testimony threw upon the very learned and careful trial judge the burden of determining between it and the positive testimony given by plaintiff. The trial judge found for plaintiff. We are bound by that finding.

II. That resolves the case into one of accord and satisfaction—the burden of establishing which also rests on defendant. [Oil Well Supply Co. v. Wolfe, 127 Mo. 611, l. c. 625.]

Whether there was an accord and satisfaction was also entirely a question of fact. If the trial of this case had been before the jury, it would have been for the court to have submitted to the jury, under proper instructions as to the essentials of accord and satisfaction, the question of whether there had been accord and satisfaction. [Oil Well Supply Co. v. Wolfe, supra; Robinson v. Railroad, 84 Mich. 658.] So therefore the solution of that fact must also rest on the finding of the trial judge, if that finding is supported by any substantial evidence and there was no error of law.

The accord and satisfaction here relied on, is founded on the transaction at Chicago, December 20, 1904, and upon the words, "Full all demands," written over the check for $83.02, remitted by defendant to plaintiff.

While it is true that those words are on this check and that the check was cashed, an examination of the letter transmitting it, it seems to us, not only fell short of any intimation that it was intended to be in full of all possible claims and demands from plaintiff on defendant growing out of this transaction, but that plaintiff most clearly did not so consider it, and did not accept it with any such understanding. Defendant in his letter of transmittal of this check wrote, in part: "I enclose check for $83.02, assuming if eventually I am right you will return to me." Plaintiff in reply wrote:

"I have yours of the 19th with check for $83.02, which amount I think will be found correct. At all events it is open for correction."

Moreover it was for a balance due on interest on the $2,284.42, from December 20, 1904, to April 29, 1904, remitted on demand for the interest. Extending it beyond interest and covering the matters then in dispute or controversy between the parties, it related to the issue of whether defendant, on December 20, 1904 owed $1,284.42 or $2,284.42. Neither party, in the discussion of that had any other sum or demand in mind. The thousand dollars now in controversy was then not only unthought of, but unknown; there was then no controversy about that to be settled—it was not the subject of discussion, much less of contention. Hence, treating this check as in full of all demands, it could only be regarded as in full of all demands then made and under mutual consideration.

The question over this thousand dollars now in suit, came up afterwards; it was a demand which rested on the contract, for a balance of $1,000, due on a contract, plainly demanding payment of $8,200.

The statement, in response to which this check was transmitted, calls for $283.02, and was a statement of interest. Two hundred dollars had been previously paid and was credited, and the $83.02 was the balance due. It might well be that it related solely to the interest account. Turning to the letter of transmittal and to the one acknowledging its receipt, we find that the matters between the parties were still open to future adjustment and correction. Looking at the transaction in Chicago on December 20, 1904, and to the correspondence following that, we find that the parties very carefully left the door of settlement wide open—each carefully reserving the right of future adjustment.

It is of the very essence of accord and satisfaction that it finally and definitely closes the matter covered by it. Nothing of or pertaining to that matter, must be

left unsettled or open to further question or arrangement. In law it is a new contract, founded on a new consideration and, to be enforceable, it must have all the essential elements of a contract, among them, mutuality and certainty.

It cannot be said that there was a fair and well understood compromise of any and all demands that might arise under these contracts, and without that, there is no valid accord and satisfaction. [Dry Goods Co. v. Goss, 65 Mo. App. 55, 1. c. 61.] The propositions that an accord and satisfaction to be binding must be mutually agreed to and accepted as accord and satisfaction, is elementary. Unless paid, this thousand dollars was unquestionably due and the payment of a smaller sum was not a satisfaction of it—even if accepted by plaintiff. [Pollman Coal Co. v. St. Louis, 145 Mo. 651, 1. c. 656; Wetmore v. Crouch, 150 Mo. 671, 1. c. 683; Winter v. K. C. Cable Ry. Co., 160 Mo. 159, 1. c. 178; McCormick v. City of St. Louis, 166 Mo. 315, 1. c. 345.] Therefore the conclusion of the trial judge, that accord and satisfaction has not been proven, is binding upon us, there being evidence to support it.

Counsel for defendant have cited many and quoted some cases defining what constitute accord and satisfaction. An examination fails to bring this case within them.

The judgment of the trial court is affirmed, all concurring.