AUGUSTA M. ZINKE, Respondent, v. KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

St. Louis Court of Appeals. Opinion Filed January 8, 1918.

1. **ACCORD AND SATISFACTION: Evidence: Burden of Proof.** The burden of proving the issue as to whether there was an accord and satisfaction, is upon the party who sets same up as an affirmative defense.

2. ———: ———: Sufficient to Go to Jury. Whether there is evidence of accord and satisfaction sufficient to go to the jury, is a question of law for the court.

3. ———: ———: When a Question of Law. Where the facts in respect to an accord and satisfaction have been ascertained or are not in dispute, their effect is purely a question of law for the court, and is not to be submitted to the jury.

4. ———: New Contract: Validity: Consideration. Where a fraternal benefit association paid the beneficiary of a certificate twice the amount of the premiums paid in by the member on the theory that he had committed suicide, and in an action for the full amount of the certificate asserted that such payment was an accord and satisfaction, which is a method of adjusting a contract or a tort by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement, the payment cannot be sustained as an accord and satisfaction, there being no new contract between the parties nor any consideration on which to base the same; the benefit certificate merely providing that in case of suicide the association should be liable only for twice the amount of the premiums paid in by the member.

5. **INSURANCE: Fraternal Insurance: Action: Tender: Necessity.** Where the beneficiary in a certificate issued by a fraternal benefit

association would in all events be entitled to retain the amount paid, the association contending that it was liable only for reduced amount because the member committed suicide, the beneficiary in an action to recover the face value of the certificate need not tender a return of the amount received.

6. ———: ———: **Evidence: Admissions.** Where a notary engaged by a fraternal benefit association inserted in the proofs of death that the cause of death was suicide, and the beneficiary in the certificate accepted a check for the amount to which she was entitled in case the member had met his death by suicide, the beneficiary was neither estopped from denying that the member came to his death by suicide nor conclusively bound by the admissions in the proof of death, but was entitled to explain or deny them and show they were made as a result of erroneous information or without information.

7. ———: ———: ———: **Suicide: Question for Jury.** In an action on a certificate issued by a fraternal benefit association, the question whether the member met his death by suicide, *held,* under the evidence, a question for the jury.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant; *D. D. Aitken,* general counsel.

(1) If there was a substantial controversy between plaintiff and defendant as to what defendant owed the plaintiff on the benefit certificate, and this controversy arose in consequence of a bona-fide and plausible claim by defendant that there was due under the benefit certificate, by reason of the fact that the member committed suicide, only $578.40, this was a consideration for the payment and acceptance of this amount in full of all claims on the benefit certificate. Coal Co. v. Coal Co., 127 Mo. App. 320, 324; Woodmen of the World v. Bridges, 165 Fed. 342; Chamberlain v. Smith, 110 Mo. App. 657, 660; Bahrenburg v. Conrad, 128 Mo. App. 526; Pohlman v. City of St. Louis, 145 Mo. 551; McCormick v. City of St. Louis, 166 Mo. 315; Railroad v. Clark, 178 U. S. 353, 44 L. Ed. 1099; Perkins v.

Headley, 49 Mo. App. 556, 562; Ogilnie v. Lee, 138 S. W. 926. (2) The amount due on the benefit certificate at the time of the payment of $578.40 was unliquidated. It was one or the other of two amounts. In the event of suicide of the member, it was $578.40. In the event of accidental or natural death, it was $1,000. This, as applied to the subject of accord and satisfaction, made the claim of the plaintiff at the time of the payment, unliquidated, and the payment by the defendant and acceptance by plaintiff of the sum of $578.40 in full of her claim on the benefit certificate is conclusive. Pohlman v. City of St. Louis, 145 Mo. 651; McCormick v. City of St. Louis, 166 Mo. 315, 335; Scott v. Realty Co., 241 Mo. 112, 135; Perkins v. Headley, 49 Mo. App. 556, 562; Railroad v. Clark, 178 U. S. 353, 44 L. Ed. 1099; Nassoiy v. Tomlinson, 148 N. Y. 326, 51 Am. St. 697, 42 N. E. 715; Camp v. Raymond, 175 N. Y. 102, 67 N. E. 113; Simmons v. Supreme Lodge, 70 N. E. 776; Camp v. Raymond, 58 N. Y. S. 909; Coffey v. Lumber Co., 139 App. Div. 746; Palmerton v. Hoxford, 4 Denio, 166, 167; Lestienne v. Ernest, 5 App. Div. 373; Ostrander v. Scott, 43 N. E. 1091; Bingham v. Browning, 64 N. E. 317, 321; Ferguson v. Grand Lodge, 156 N. W. 176; Greenleaf v. Monot, 116 Ia. 535; Sparks v. Spaulding, 158 Ia. 491; Neeley v. Thompson, 68 Kans. 193; Treat v. Price, 47 Neb. 875; Lanier v. Merrill, 108 Mich. 58, 62 Am. St. 687; N. Y. Life Ins. Co. v. McDonald, 160 Pac. 193. (3) Where the debtor concedes an amount to be due his creditor, and the creditor claims a greater sum, the creditor has the right to withhold payment, unless a receipt in full is given, and this is a consideration for the receipt in full of the entire claim. Scott v. Realty Co., 241 Mo. 112, 135. (4) Settlements between insurer and insured have all the elements of a contract and are incapable of rescission by one party as any other contract. Such settlements are binding in the absence of fraud, deceit or duress. Frey v. Insurance Co., 189 Mo. App. 696; Georgia Home Ins. Co. v. Wortham, 113 Ala. 479, 59 Am. St. 129; McLain v. Insurance Co., 122 Ia. 355;

Davis v. Phoenix Ins. Co., 81 Mo. App. 264; Howard
v. Georgia Home Ins. Co., 102 Ga. 137; Benson v.
Prudential Ins. Co., 13 Pa. Super. Ct. 363; Clanton v.
Insurance Co., 101 Mo. App. 312, 322; Wood v. Mass.
Accident Assn., 54 N. E. 541; Biddlecomb v. General
Accident Co., 152 S. E. 103, 106; Dodt v. Prudential
Ins. Co., 186 Mo. App. 168; Brady v. Insurance Co.,
180 Mo. App. 214; 3 Bouviers Law Dict., page 2823 under
"Receipts in full."    (5) When a party by word or
conduct voluntarily induces another to act in view of
a certain state of facts, he will be estopped to allege
against him a different state of facts, to his prejudice.
Cornwall v. Gainer, 85 Mo. App. 684; Reynolds v.
Kraft, 144 Mo. 433, 477; State ex rel. v. Branch, 151
Mo. 622, 639; 11 Am. and Eng. Encyc. Law (2 Ed.),
p. 421; Grundy v. Webb, 48 Mo. 562; Woodmen of
the World v. Bridges, 165 Fed. 342.    (6) The beneficiary
furnishing preliminary proofs of death showing suicide
of the member and settling with the defendant, receiv-
ing the amount due her in case of suicide, and
receipting in full for all claims on the certificate, with-
out informing the society prior to the settlement that
the proofs of death did not state the true facts, is
estopped from making claim contrary to this state-
ment.    Ben. Ins. Co. v. Newton, 22 Wallace 32, 22 L.
Ed. 763; Campbell v. Insurance Co., 10 Allen, 213,
219; Irvin v. Insurance Co., 1 Bos. 507; Employers
Liability v. Anderson, 74 Kan. App. 18-23; Sage v.
Finney, 156 Mo. App. 30-42.    (a) It is the law of this
State that an admission of suicide in preliminary proof
of death under a policy of insurance is conclusive against
the claimant on the trial of the case, for the amount
agreed to be paid, where such admission is not in some
way disaffirmed or explained.    Stephens v. Insurance
Co., 190 Mo. App. 680; Kastens v. Supreme Lodge, 190
Mo. App. 65; Hammond v. Benefit Society, 148 Mo.
App. 33.    (7) The court should have submitted the
question of accord and satisfaction to the jury, and
should have given instructions 1-c and 1-f, requested
by the defendant and refused by the court, and should

not have instructed the jury that there was no considera-
tion for the release. Barrett v. Kern, 141 Mo. App.
23; Bahrenburg v. Fruit Co., 128 Mo. App. 526; Heit-
land v. Culver, 181 Mo. App. 697. (8) Plaintiff hav-
ing received $578.40 in full of all claims on the benefit
certificate and defendant having paid the amount with
such understanding, plaintiff cannot maintain this suit
without tendering back to defendant the amount receiv-
ed. This would operate as a fraud on defendant, and
deprive it of the legal right it had to refuse to pay
said amount without a release of the entire claim.
Boehm v. American Patriots, 172 Mo. App. 104; Carroll
v. United Railway Co., 157 Mo. App. 247-289; Frey
v. Prudential Ins. Co., 189 Mo. App. 696.

*Durham & Durham* by *Geo. O. Durham* for respond-
ent.

(1) (a) It is not every unliquidated demand upon
which a payment is made that is within the rule as
to accord and satisfaction. Rogers v. Nee, 194 Mo. App.
163; Dodt v. Insurance Co., 186 Mo. App. 168; Pollman v.
St. Louis, 145 Mo. 651. (b) There must be a substantial
controversy concerning the claim. Bahrenburg v. Fruit
Co., 128 Mo. App. 526, conceded by appellant brief, p.
13; 1 C. J. 358. (c) An accord and satisfaction requires
an agreement, an *aggregatio mentium*. If the obligation
sought to be extinguished arises from contract it
requires the substitution of a new agreement in place
of the old. 1 C. J. 527; Barrett v. Kern, 141 Mo. App.
24; Perkins v. Headley 49 Mo. App. 561, Barcus v. Case
T. M. Co., 197 S. W. 478; (d) There was no evidence
that the money was tendered by way of compromise;
there was no evidence that plaintiff had claimed any
particular sum; the intention was to pay the suicide
benefit thinking this was the entire obligation and the
receipt so recites. In view of the fact that suicide was
not proven, this was shown to be a mistake, and the
sum paid was not the full amount due under the suicide
by-laws or any other laws, and was not a bar to
plaintiff's recovery. Dodt v. Insurance Co., 186 Mo.

·App. 168. (2) Settlements between insurance companies
and the insured are of course binding if fair and in
the absence of fraud, deceit, duress or mistake as
other contracts.   The cases cited by appellant, however,
limit the rule to cases of fair and well understood cases
of compromise. Dodt v. Insurance Co., 186 Mo. App.
174; Pollman v. St Louis, 145 Mo. 651; Rogers v. Nee, 194
Mo. App. 163. (3) Beneficiary is not conclusively bound
by even her· own admissions appearing in the proofs
of death and she may explain, or deny them or show
that they were made as a result of erroneous informa-
tion or no information at all.   Remfry v. Insurance Co.,
196 S. W. 775; Sage v. Finney, 156 Mo. App. 30-42;
Stephens    v. Insurance    Co.,    190    Mo. App.    680;
Kastens v. Supreme Lodge, 190 App. 65; Hammond v.
Benefit S., 148 App. 33;  Grey  v.  Ind.  Order of
Foresters, 196 S. W. 779.   (4) The court properly
refused to submit the issue of accord and satisfaction
to the jury.   There was no evidence that the money
was paid by way of compromise of a disputed claim
or  to  settle  a  controversy.   On   the   contrary  it
conclusively appeared that the party paid the money
with the intention of executing an old contract, and on
the theory that the insured committed suicide.  1 C. J.
414; Barcus v. Case T. M. Co., 197 S. W. 478. (5) The
transaction whereby the money was paid did not amount
to a new contract of release or compromise, rendering
it necessary for plaintiff to obtain equitable relief in
setting° aside such contract nor require her ·to tender
back what she had received as prerequisite to maintain-
ing such equitable action.   The money was paid on the
old contract and was a discharge only *pro tanto.* Dodt
v. Insurance Co., 186 Mo. App. 168.   (6) The suicide
provision was no part of the contract of insurance be-
tween the defendant and plaintiff's husband.   There was
a conflict between the application and the policy in that
the application offered as a basis of the contract a pro-
vision rendering the contract void in case of suicide.
This was in conflict with the by-laws and in conflict with
the policy as written. In case of a conflict between the

application and the policy the policy governs. Laker v. Fraternal Union, 95 Mo. App. 353; Westermann v. Woodmen, 236 Mo. 326; Pledger v. Assn., 197 S. W. 88. Since by the terms of the contract suicide was no defense, the claim could not have been in dispute and a partial payment could in no case satisfy the entire debt. Pollman Coal Co. v. St Louis, 145 Mo. 651.

BECKER, J.—Plaintiff instituted this action before a justice of the peace by filing a statement in which she claimed that she was beneficiary in a benefit certificate issued on the life of her husband, Ferdinand G. Zinke, in the sum of $1000; that the insured departed this life during the time that said benefit certificate was in force and that the association paid plaintiff the sum of $578.40, leaving a balance of $421.60 due plaintiff, which balance had been previously demanded and payment refused. From a judgment in favor of plaintiff, in the justice court, the defendant appealed. On a trial *de novo* in the circuit before a judge and jury, a judgment was entered in favor of plaintiff and against the defendant in the sum of $421.60, and defendant in due course appealed.

It is admitted that the defendant, Knights of the Maccabees of the World, is a corporation, successor to the Supreme Tent, Knights of the Maccabees of the World, and is a fraternal benefit association organized under the laws of the State of Michigan and authorized to do business in the State of Missouri; that the defendant had issued, on the life of Ferdinand G. Zinke, its policy No. 20410, and that at his death one assessment on the membership, not exceeding in amount the sum of $1000, was to be paid thereunder as a benefit to plaintiff, Augusta M. Zinke, wife of the insured, upon satisfactory proof of his death and the surrender of said certificate; that one assessment on the membership of the defendant company at the time of the death of Ferdinand G. Zinke would have amounted to more than the sum of $1000. The application of the insured for membership in the defendant order contained the following: "I also agree

that should I commit suicide in contravention of the laws of said Supreme Tent, whether sane or insane at the time, that this contract shall be null and void and of no binding force upon said Supreme Tent." . . . "This application and the laws of said Supreme Tent now in force or that may hereafter be adopted together with my certificate of membership are made the contract between myself and the said Supreme Tent, and I for myself and my beneficiary agree to conform to and be governed thereby." Section 379 of the by-laws of the defendant in force and effect at the time of the decease of the insured provides that; "No benefit shall be paid on account of the death of a member who shall die by his own hand, whether sane or insane; provided, however, that the beneficiary named in the life benefit certificate, or the person legally entitled to the benefit, shall receive an amount equal to twice the amount contributed to the Life Benefit Fund by the member during his lifetime, but not in excess of the face of the certificate."

There is no controversy but that Ferdinand G. Zinke, the insured, paid the defendant association in monthly rates on said certificate, up to the time of his death, $289.20; that at the time of his death his dues to the association were paid, and that he was in good standing; that on or about the 5th day of June, 1913, sometime after the death of the insured, the defendant association paid to Augusta M. Zinke, the plaintiff, the sum of $578.40, being twice the amount of the monthly rates contributed to he Life Benefit Fund by Ferdinand G. Zinke, during his lifetime.

The record shows that the insured died on the 31st of March, 1913, and that the beneficiary, plaintiff herein, furnished the defendant preliminary proofs of death, consisting of her own affidavit, the affidavit of the attending physician, the verdict of the coroner's jury, affidavits taken at the coroner's inquest, and the sworn statement of the officers of the subordinate lodge of which the insured was a member. Each of these papers gave the cause of the death of the insured as suicide. The affidavit of the beneficiary contained the following: "Date of

death?'' ''March 31, 1913.'' ''Remote cause of death?'' ''Had trouble with his head for about six weeks.'' ''Immediate cause of death?'' ''Not of sound mind, suicide.'' The defendant association upon receiving the preliminary proofs of death issued its check, payable to the beneficiary, in the sum of 578.40, which is admitted to be double the amount the insured had paid in during his lifetime. This check together with the receipt prepared by the defendant association, was sent forward to the officers of the local lodge, which it appears was customary, with instructions to turn the same over to the plaintiff upon the execution of the receipt.

It appears that plaintiff did not accept the check immediately but consulted the officers of the local lodge and her attorney and took the matter under advisement for some days. Plaintiff's attorney advised her, ''that if it should be found by a trier of the fact that suicide was the cause of her husband's death, that that amount was all that was due under the policy. I advised her further that if he had not committed suicide, that the full amount, namely, $1000, would be coming to her; and also advised her concerning the necessary steps that it would take in order to test that question in the courts. I tried to put the whole facts and all the circumstances before her for her decision as to whether or not she would accept the amount offered, or fight for the full amount of the policy, $1000.''

It further appears that there was no communication between the plaintiff and the defendant from the date that defendant company mailed the check for $578.40, together with receipt attached, to the officers of the local lodge. The receipt which plaintiff executed at the time she accepted the check is as follows: ''Received from the Knights of the Maccabees of the World, the sum of Five Hundred and Seventy-eight and 40-100 Dollars ($578.40), that being twice the amount of monthly rates contributed to the life benefit fund of Ferdinand G. Zinke, late a member of Tent No. 116, State or Province of Missouri, and the full amount for

which the association is liable under its laws governing suicide claims. Warrant No. 34275.

AUGUSTA M. ZINKE,

Widow and Beneficiary of Ferdinand G. Zinke.

Witness:

NELSON THOMAS,

JOHANNA ANGERER."

Plaintiff signed the above receipt on the 7th day of June, 1913, and thereafter on the 21st day of July, 1913, wrote a letter, in German, to the defendant, of which letter the record states a correct translation to be as follows: "Gentlemen of the Maccabees: I ask again if the Gentlemen of the Maccabees will pay the rest of $400, which I can claim under the Missouri law, if not, I will go to the courts. Why can rich people receive their money, where the husband shot himself, and have received their money of $8000, and a poor woman, who is without any help, shall be cheated. As my husband was already at the edge of the grave, that which he did, he did without knowledge as he was always afraid of death.

Respectfully,

Widow, AUGUSTA M. ZINKE."

On August 4, 1913, the defendant, through its supreme record keeper, mailed the following answer in reply to plaintiff's letter: "Mrs. Augusta M. Zinke, St. Louis, Mo., Dear Madam: Your letter of July 21st, in relation to your husband's benefit insurance, has been received, and in reply permit us to say that at the time your husband joined the Knights of the Maccabees of the World, the laws provided that in case of death by suicide, whether sane or insane, his beneficiary should be entitled to receive twice the amount he had contributed to the life benefit fund. This was paid you in April, last. There is nothing more you're due under the laws of the State of Missouri, or under the laws of the K. O. T. M., or under any other laws. Your husband was a member of an association, acting together for the purpose of providing life benefits or insurance at the least possible cost; and among other

things, they agreed that if any of them should commit
.suicide, his beneficiary should receive twice the amount
he had contributed to the life benefit fund, but in no
case to exceed the amount of the certificate. We have
no knowledge of what you are talking about, some
rich man's beneficiary getting $8,000, and if she did,
or did not, it would not have any bearing in a case
like.this. She or he might have been entitled to it. The
management would very much prefer that your husband
had died in some other way so they could have paid
it all. They have no interest in it except to carry out
the agreements made by the members themselves.

Respectfully yours,

L. E. Sisler, Supreme R. K.

Dictated.''

It is admitted that the plaintiff gave notice to the
defendant prior to the institution of this suit, that the
plaintiff did and would deny that the insured, Fer-
dinand G. Zinke, deceased, committed suicide and
that she claimed her statement in the original proof of
death was erroneous and the result of mistake and
misapprehension.

Mrs. Augusta M. Zinke, plaintiff, through the
intervention of an interpreter, testified that on the
morning of the 31st day of March, 1913, she awoke and
found her husband, the insured, Ferdinand G. Zinke,
was not in his bed and that she called to her daughter,
Mrs. Angero, and asked her to see where he could be.
A moment later her daughter called and she went to
where her daughter was and found the insured lying
on his back across the threshold of a hall room; that
the insured was dead; that her daughter left the house
to call a doctor. She further testified: ''I saw a
little rope; it was lying there; but there was no signs
that he had done something to himself;'' that later in
the day some of the officers of the local lodge called on
her and suggested that they send a Mr. Rauck, a notary
public, to her and make out the preliminary proof of
death; that Mr. Rauck came there that night or the
following day; that Mr. Rauck had a paper with him

which the witness said she signed; that when Rauck asked her what was the cause of her husband's death, she told him brain stroke or heart stroke. Witness specifically denied that she had stated to the notary, in answer to the question as to the cause of her husband's death, "not of sound mind, suicide." Witness stated that the notary wrote down the answers to the questions and then read the paper to her and she signed it, but that she did not read the paper herself.

Witness further testified that she did not know how her husband came to his death and was permitted to answer the question: "Do you know whether or not he hung himself or strangled himself with the rope?" A. 'There was no sign of it, that he did it.'" She testified that her husband had been suffering with kidney trouble and pains in his head for some time prior to the time of his decease. Witness testified she was not present at the coroner's inquest.

Johanna Angero testified for plaintiff that she was the daughter of the insured; that on the day in question her mother called her and told her her father was not in bed and she immediately looked for him and that as she opened the door to a hall room the body of the insured fell across the threshold, "it seems like it was just as if someone would just be standing there leaning up against the door and you open it sudden like and they would fall down." She did not make any examination to find out the cause of his death at the time; she did not see any rope nor did she change the position of the body in any way. She testified that the insured had been suffering with kidney trouble for two years before his death and he frequently got dizzy spells which would require him to lay down as everything got black in front of his eyes. She testified that the notary came to the house and that she was present when her mother answered the questions asked by the notary, and that the questions were asked in English; that she particularly remembered the question as to the cause of the death being asked her mother, and that her mother answered that it

was due to brain stroke or heart stroke; that her mother signed and swore to the contents of the paper in her presence; that the following morning the notary returned to the house and stated to her that her father had died of suicide; that the witness told him she wouldn't believe him, that it wasn't true, to which the notary replied that it was so, that he had found it out at the city hall; that he said, "he wanted a dollar to go to the city hall and get something, I don't know what it was about." She was asked the question: "Did he write anything down there?" A. "Why, yes." Q. "Did you see what he wrote down there?" A. "I couldn't see for sure if he wrote anything down or scratched anything out, but I seen him handle his pen; that is all." Q. "On that occasion did he obtain your mother's signature to any paper; on that occasion when he came back the second time?" A. "No, sir." Q. "Did he ask her anything?" A. "No, sir." Q. "Did he talk to her at all?" A. "No, sir."

The witness further testified that neither she nor her mother saw the certificates of the doctors which went to make up the preliminary proofs of death. Witness further testified that she had herself called in Dr. Bram immediately after finding the body of the insured, and that she was present when he made his examination; that she saw no rope there at the time.

On cross-examination witness testified that Mr. Rauck, the notary public, said that he was sent there by the lodge and that she was present at all times during the conversation Mr. Rauck and her mother had, and that at no time was anything said with reference to the cause of the death of the insured being suicide; that she distinctly heard her mother tell the notary that her father had died of brain stroke or heart stroke.

Otto L. Rauck, testified for the defendant and stated that he was a notary and at the suggestion of the local officers of the lodge he took the necessary blanks for proving preliminary proofs of death, and went down to Mrs. Zinke's, where he asked her the

questions appearing upon the beneficiary's affidavit, and that he wrote in the answers that Mrs. Zinke gave him; that he also obtained the doctor's certificates but that he did not read them to Mrs. Zinke. He testified that he went down there the second time to see about the coroner's papers and that he obtained the report of the coroner's inquest but did not read it to Mrs. Zinke. The witness was asked: "Do you recall that you asked her, 'Immediate cause of death.' and she said, 'Not of sound mind—suicide?' You said that was asked in German, I believe?" A. "Yes, sir." Q. "And what she replied couldn't be interpreted as anything else except, 'Not of sound mind.' " A. "Possibly she didn't use just those exact words, but the meaning is the same." . . . Q. "Didn't you write down in here that night that he died of brain stroke, had trouble with his head, and died of brain stroke, and afterwards erased it and put this statement in there?" A. "Not to my knowledge." Q. "Well, you would have known it if you had done it?" A. "Well, that is two years ago."

Benjamin Wolff, a witness for the defendant, testified that he was commander of the Anderson Tent of which the insured was a member, and was its presiding officer, and that upon learning of the death of the insured he called upon the beneficiary at her home. The beneficiary stated to him that the deceased had been sick for some time—not able to work—and that his death was sudden; that the beneficiary did not state what was the cause of the insured's death; that he asked the beneficiary if she had in mind a notary whom she would prefer to have make out the preliminary proof of death and upon her stating that she did not, he said he would give the necessary blanks to a notary and send him out to her, and that he thereafter sent Mr. Rauck to plaintiff.

Dr. J. C. Bram, a witness for the defendant, testified that he was a physician and was called to plaintiff's apartment. He found the insured lying dead just outside a little hall room with his feet just inside and a small rope was around his neck.

Learned counsel for appellant submits that the main question arising by this appeal is the legal effect of the receipt or release dated June 7, 1913, introduced in evidence by the defendant. This receipt or release was excluded from the consideration of the jury by the court's own instruction and for the reason that the court was of the opinion that said receipt or release was not supported by any consideration and therefore not binding upon the plaintiff. The giving of said instruction by the court is complained of as erroneous.

Appellant's argument is based on the supposition that the record shows that there was a substantial controversy between plaintiff and defendant as to what defendant owed the plaintiff on the benefit certificate; that this controversy arose in consequence of the bona-fide and plausible claim by defendant that the insured had committed suicide and therefore there was due under the benefit certificate but $578.40, whereas the plaintiff claimed $1000 as the amount due her as beneficiary thereunder, and that the payment of the $578.40 and the acceptance of such amount under the receipt as set out in full above, signed by the beneficiary, furnished sufficient consideration to make the transaction one of accord and satisfaction as between plaintiff and defendant and that the court should have submitted that issue to the jury. We must rule this point against appellant.

To begin with, the burden of proving the issue as to whether there was an accord and satisfaction was upon the defendant who set up the same as an affirmative defense. [Oil Well Supply Co. v. Wolfe, 127 Mo. 611, l. c. 625, 30 S. W. 145; Barrett v. Kern, 141 Mo. App. 5, l. c. 23, 121 S. W. 774; Bahrenburg v. Fruit Co., 128 Mo. App. 526, 107 S. W. 449.] And, "whether or not there is evidence of accord and satisfaction sufficient for submission to the jury is a question of law for the court, and where the facts in respect to accord and satisfaction have been ascertained or are not in dispute, their effect is purely a question of law for the court and is not

to be submitted to the jury." [1 Corpus Juris., 583. See, also, Barrett v. Kern, supra.]

The undisputed evidence shows that upon the death of the insured the commander of the local lodge furnished plaintiff with a notary public who made up her proof of death in which, correctly or incorrectly, the cause of death was given as suicide. It is not in evidence that the plaintiff in the proof of death demanded any sum from the defendant. Immediately upon the receipt of this proof the defendant made out its check for $578.40 and sent the same in the usual course to the officers of the local lodge who the record discloses were without any authority to negotiate with the plaintiff but merely were authorized to deliver the check to plaintiff upon her signing a receipt in the form usually required by the defendant. The plaintiff considered the matter for several days and finally accepted the check and signed the receipt. It is to be noted in this connection that the receipt does no recite that it is in full of plaintiff's claim under the benefit certificate but states that the sum of $578.40 is, "the full amount for which the association is liable under its laws governing suicide claims." We hold that the facts in this case fail to show any new contract or any consideration on which to base an accord and satisfaction. "An accord and satisfaction is a method of adjusting a contract or a tort by substituting for such contract or cause of action, an agreement for the satisfaction thereof, and an execution of such substituted agreement." [1 R. C. L., 177.] As was said by this court in the case of Barrett v. Kern, 141 Mo. App. 5, l. c. 24: "It is of the very essence of accord and satisfaction that it finally and definitely closes the matter covered by it. Nothing of or pertaining to that matter must be left unsettled or open to further question or arrangement. In law it is a new contract, founded on a new consideration and, to be enforceable, it must have all the essential elements of a contract, among them, mutuality and certainty." The undisputed facts in this case clearly fall short of bringing the case within the rule, and the trial court properly refused to submit

the issue of accord and satisfaction to the jury. [See Goodson, et al. v. National Masonic Accident Assn., 91 Mo. App. l. c. 353.]

It is assigned as error that the plaintiff did not tender to the defendant the sum of $578.40, which plaintiff acknowledges to have received from the defendant. This point is without merit as the plaintiff in any event would be entitled to retain that amount, and it has repeatedly been held that a party need not make a tender of an amount received under such circumstances. [Alexander v. Railroad, 54 Mo. App. 66; Winter v. Railroad, 160 Mo. 159, 61 S. W. 606.]

As to the point that plaintiff, having sent forward her preliminary proof of death which contained the statement that her husband committed suicide, and having accepted the check sent to her by the defendant, is now estopped from denying that the member came to his death by suicide, we hold this is not the law. The beneficiary, plaintiff herein, was not conclusively bound by the admissions contained in her proof of death, but she was properly permitted to explain or deny them or to show that they were made as a result of erroneous information or without any information at all. [Remfry v. Ins Co., —Mo. App.— 196 S. W. 775; Grey v. Independent Order of Foresters,—Mo. App.—,196 S. W. 779; Sage v. Finney, 156 Mo. App. 30, l. c. 42, 135 S. W. 996; Stephens v. Ins. Co., 190 Mo. App. 673, 176 S. W. 253; Queathem v. Modern Woodmen, 148 Mo. App. 33, 127 S. W. 651.]

Plaintiff's testimony, together with that of her daughter, with reference to the answers made by the plaintiff to the questions propounded to her by the notary who made up the affidavit of the beneficiary herein, was amply sufficient to require the question of suicide or no suicide to be submitted to the jury upon proper instructions.

We have examined the instructions given by the court and they fully and properly submitted the case to the jury, and in view of what we have said above there

was no error in the court's refusal to give the instruction asked for by the defendant.

Finding no error in the case the judgment is affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.