**Forrest J. SCHOELLER, Appellant,**

v.

**Forrest L. SCHOELLER et al., Respondents.**

No. 25366.

Kansas City Court of Appeals,
Missouri.

Feb. 1, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 5, 1971.

Tom B. Kretsinger and Warren H. Sapp, of Kretsinger & Kretsinger, Kansas City, for appellant.

William J. Turpin, of Wherritt & Turpin, Liberty, for respondents.

HOWARD, Judge.

In this suit plaintiff seeks judicial dissolution of a partnership and an accounting of the profits due therefrom. This is, or was, a family partnership. The defendants, Forrest L. Schoeller and Sylvia A. Schoeller, are plaintiff's father and mother. Defendants William F. Schoeller and Made-

line J. Schoeller are plaintiff's brother and sister-in-law. Likewise, defendants, Robert L. Schoeller and Virginia L. Schoeller are plaintiff's brother and sister-in-law. Defendant, Schoeller's, Inc., a corporation, was organized by plaintiff's brothers, William and Robert. By answer and counterclaim, the existence of the partnership was judicially admitted. It was claimed that the partnership was dissolved and its business wound up as of July 8, 1962; that plaintiff's claim to any interest in the partnership was settled by an accord and satisfaction, whereby plaintiff accepted a promissory note in the amount of $29,903.51 from Forrest L. Schoeller, plaintiff's father, in full satisfaction of his interest in the partnership. The father claims set-offs and counterclaims as follows: $11,382.48 as plaintiff's beginning interest in the partnership which was never paid in cash and which was still owing by plaintiff, plus $11,000.00 as the balance due for money loaned to plaintiff by his father, and $175.50 paid by the father for a tax deficiency owed by the plaintiff, thus leaving a balance of $7,345.53 due on the note. The father alone tendered judgment to the plaintiff in this latter amount. Trial was had to the court without a jury. During the trial it appears from a colloquy between the judge and counsel that the parties had agreed that the trial would be limited to the question of liability and that the dollar amounts involved would be left for later determination in the event that some or all of the defendants were found to be liable to the plaintiff in some amount. However, after trial, the court entered judgment for plaintiff against the defendant father alone, in the sum of $7,521.03. Judgment was entered in favor of the other defendants. Plaintiff has appealed contending that the court's judgment was based upon erroneous factual conclusions and that he is entitled to a decree of dissolution of the partnership and an accounting of his interest therein and his profits therefrom.

So that the facts may be viewed in their proper perspective, it must be remembered that we are here dealing with a fiction established for the purpose of tax avoidance (or tax evasion?). In 1955, defendant, Forrest L. Schoeller, and his family moved to Liberty in Clay County, Missouri, and established a grocery store business. Plaintiff was in high school and one of his brothers was in college, but all three sons and the mother and father worked in the store. After plaintiff got out of high school and his brother left college, the three boys worked full time in the store and were paid a stipulated amount per week or month as salary, which was gradually increased. With the exception of time in service, plaintiff devoted full time to the store until the fall of 1961. By 1958, the store was prospering and to lessen the income tax burden, the defendant (father) Forrest L. Schoeller consulted an attorney and a partnership agreement was drawn up and executed the first of 1959. The partners were Forrest L. Schoeller, his wife, Sylvia, and the three boys, William, Robert and Forrest James Schoeller (the plaintiff). Each of these five partners had an equal share in the profits and losses.

The three sons continued to work in the store full time as before the partnership agreement. They were paid a salary but no division of profits was ever made. This continued until the fall of 1961 when plaintiff became ill and could not work in the store for a period of a month or two. Thereafter, he returned to the store on a part-time basis but apparently was not able to work full time in the store. In the spring of 1962, probably in April, plaintiff ceased to work in the store. The evidence is in conflict as to exactly what happened in this connection. Plaintiff testified that his father told him that he was unable to keep up his end of the work and, therefore, they (the father and plaintiff's two brothers) did not want him in the store any more. The father testified that because of his health problems plaintiff wanted to get

out of the store and get in some business less strenuous; that plaintiff left the store voluntarily. In any event plaintiff quit working in the store in the spring of 1962. After considering other possible businesses, plaintiff determined to go into the hog business; he owned some real estate in the area. For this purpose, he borrowed $10,-000.00 from his father sometime during the spring or summer of 1962 and later an additional $2,000.00. $1,000.00 of this borrowing has been repaid, leaving a balance admittedly unpaid of $11,000.00.

It appears that about the time plaintiff left the store, his father and mother decided to retire and move to Arizona. The father testified that he told plaintiff he was going to sell the business to "Bill and Bob" and did so. The sale price was $100,000.00 to be paid in installments over a period of ten years with no interest. Apparently, there was no written contract of sale but the transaction was evidenced by promissory notes from Bill and Bob to the father. It is noted that this sale price closely approximates the total partnership capital account in the amount of $99,832.31, as shown by a balance sheet in evidence, which was prepared as of the date of sale, July 8, 1962.

During the period from 1959 to 1962, the father arranged for the preparation of the partnership income tax returns and the individual income tax returns of all of the partners and the taxes due from the partners was paid from the funds of the store. After plaintiff left the store and the father sold out to his other two sons, the father requested plaintiff to have the father's attorney, Mr. Turpin, prepare plaintiff's 1962 income tax return so that all of the records concerning the store would be in one place. Plaintiff did so. For some reason undisclosed in the evidence, an Internal Revenue audit was anticipated. Sometime after the sale, the exact date does not appear, Mr. Turpin prepared two notes which are in evidence. The first, Exhibit A, was dated January 5, 1959 (al-

though prepared and executed in 1962) in the amount of $11,382.48. This was signed by plaintiff, payable to his father four years after date, with no interest. The second note, Exhibit B, is dated July 8, 1962, in the amount of $29,903.51, signed by the father and payable to the plaintiff one year after date, with no interest. The testimony was that these two notes represented plaintiff's beginning and ending capital account in the partnership. Two balance sheets are in evidence bearing dates of January, 1959, and July 8, 1962, showing that as of such dates, plaintiff's capital account was the amounts shown on the two notes. Inasmuch as the trial was limited to the question of liability and not to specific amounts owed, no evidence in support of these figures is in the record.

The father testified that he secured these two notes from Mr. Turpin, took them to the plaintiff, secured plaintiff's signature on the first note and showed him the second note. He did not give the second note to plaintiff but told plaintiff that the note would be left in Mr. Turpin's office because of the anticipated Internal Revenue audit and that plaintiff could pick it up from Mr. Turpin's office. Plaintiff denied any memory of the first note but admitted that he did sign it and that it bore his signature. He denied ever having seen or being told about the second note by his father or Mr. Turpin. He denied any knowledge of this second note until sometime in the spring of 1964 when the Internal Revenue audit had been completed and an agent made demand for additional taxes due as a result of adjustments made in the depreciation account of the store. Plaintiff testified that the agent told him of the existence of the second note which was in Mr. Turpin's office and that this was his first knowledge of the note. As a result of this audit, plaintiff owed $175.50 additional tax for the year 1962. He called his father in Sun City, Arizona and asked that the father pay this amount. The father sent plaintiff a check therefor.

At the same time plaintiff asked his father about the second note and requested payment thereof. He testified that his father would not say when he would pay this note one way or the other. On the other hand, the father testified that he advised plaintiff that the note was signed to terminate the partnership and that plaintiff did not pursue the matter further.

There was also introduced in evidence as defendant's Exhibit E, what purports to be Schedule D from plaintiff's 1962 federal income tax return. This shows a sale of plaintiff's capital account in the store for the amount of $29,903.51. It shows a basis of the same amount with no gain or loss. Plaintiff denied that he had even seen this exhibit. He denied that he had ever discussed his capital account in the store or its sale or the two notes heretofore mentioned with Mr. Turpin in connection with the preparation of his 1962 income tax return. He stated emphatically that he did not have a copy of such return; had not received one from Mr. Turpin and had not been told that one was available for him and that he could pick it up at Mr. Turpin's office. Plaintiff advised Mr. Turpin that he was not to pay any tax on anything connected with the store but that the store would pay such tax. He justified this on the basis that this was the way it had always been done and the store was paying the tax for his father and brothers.

Aside from the call to Sun City in 1964 concerning the 1962 income tax deficiency, plaintiff never made any demand on any of the defendants for any moneys due him from the partnership and never asserted any rights in, or entitlement to, control or management of the store until demand was made by his attorney some years after 1962.

In connection with the partnership, the store had taken out a life insurance policy with disability provisions on plaintiff. The premiums were paid by the store. During the summer of 1962, plaintiff caused this insurance policy to be transferred to him individually and he paid the premiums thereafter. Plaintiff testified that his brothers told him that the store was no longer going to pay the premium on this policy and that if he desired to continue insurance it would be necessary for him to transfer the policy to an individual basis and pay the premiums personally.

In support of its judgment the trial court made certain findings from the evidence. It concluded that there was constructive delivery of the promissory note in the amount of $29,903.51, payable to plaintiff and, therefore, an accord and satisfaction was entered into between plaintiff and his father. The court further concluded that plaintiff ratified and reaffirmed such accord and satisfaction by requesting and accepting payment from his father of $175.50 for the 1962 income tax deficiency and, therefore, an estoppel was created based upon the premise that plaintiff did not hold himself out to be a partner. On the basis of these holdings, the court entered judgment for plaintiff for the net amount due under the promissory note after giving credit for the set-offs and counterclaims asserted by the father.

■ The evidence as to delivery of the second promissory note to plaintiff was: the father testified that at the time plaintiff executed the first note, he (the father) signed the second note, payable to plaintiff. Instead of giving the note to plaintiff, the father stated that he explained to plaintiff the purpose of the note and told plaintiff that the note would be left in Mr. Turpin's office and that the plaintiff could pick it up thereafter. However, the father testified that he did not intend to pay the note and did not believe that he owed plaintiff the amount of money represented by the note and that he did not authorize his attorney, Mr. Turpin, to deliver the note to plaintiff. On plaintiff's part, he testified that he never saw the note and did not know of its existence until informed thereof by the Revenue agent in 1964. Admittedly, the note was never in the physical possession

of plaintiff and it was introduced at the trial by defendants. Under such circumstances, we must sustain plaintiff's contention that the trial court erred in finding constructive delivery of this promissory note for the reason that there is no evidence sufficient to sustain such conclusion. Even if the court disbelieved plaintiff and believed that the father showed it to plaintiff and told plaintiff that he could pick it up from Mr. Turpin, the father's unequivocal and undenied admission that he did not intend to pay the note and did not authorize his attorney to deliver it to plaintiff conclusively demonstrates that there could be no constructive delivery. Absent authorization, Mr. Turpin could not, under any circumstances, have made a valid delivery and could not have properly relinquished control of the note to plaintiff.

Absent such delivery (actual or constructive) there could be no accord and satisfaction. The testimony of plaintiff and his father is in agreement that there was no discussion or negotiations between plaintiff and any of the defendants concerning the winding-up of the partnership or the amount which the partnership owed plaintiff. In fact, the father testified that he thought he owned all of the capital account of the partnership and did not owe plaintiff anything. When asked by the court to explain why he signed the second note if he did not intend to pay it, the father's only reply was "I don't know." While a specific and detailed agreement is not a necessary prerequisite to a valid accord and satisfaction, the performance of the satisfaction is an absolute necessity. Such satisfaction must be given for the purpose of satisfying the existing claim and must be knowingly accepted for such purpose. Since there was no delivery of the note, there is no evidence to support a finding that the note was either given or received as such satisfaction. See Green v. Whaley, 271 Mo. 636, 197 S.W. 355; Bohle v. Sternfels, Mo., 261 S.W.2d 936; Barrett v. Kern, 141 Mo.App. 5, 121 S.W. 774; Chapman v. Adams, 204 Mo.App. 659, 219 S.W. 132; Aldridge v. Shelton's Estate, Mo.App., 86 S.W.2d 395; Western Military Academy v. Viviano, 235 Mo.App. 301, 133 S.W.2d 1098; and Shofler v. Jordan, Mo.App., 284 S.W.2d 612.

The court concluded that an estoppel was created when plaintiff asked his father to pay the 1962 income tax deficiency in the amount of $175.50. Just how this estoppel operates is not explained by the court and has not been explained by defendants either in their briefs or on oral argument. Before there can be a valid estoppel, the one who claims the benefit of the estoppel must have changed his position in reliance upon the actions or assertions of the one against whom the estoppel is claimed. Emery v. Brown Shoe Co., Mo., 287 S.W.2d 761. In this case the defendants in no way changed their position. This request for payment of the income tax deficiency is said to amount to a ratification and reaffirmation of the accord and satisfaction by the plaintiff. This inference is not justified by the evidence. All during the existence of the partnership, the father had secured the preparation of tax returns and the store had paid the taxes due for all of the partners, including plaintiff. This was true of the 1962 taxes due on account of income from the store and it was only consistent with past policy that plaintiff should request payment by his father. It, in no way, shows that an agreement winding up the affairs of the partnership had been entered into or reaffirmed. The action of the plaintiff is in no way inconsistent with the continuation of the partnership.

We, therefore, conclude that the judgment of the trial court is erroneous because based upon conclusions unsupported by the evidence and must, therefore, be reversed. Since this is a review of a court-tried case, we must now determine what disposition should be made of the case.

Plaintiff's petition pleads in the alternative that he was either (1) wrongfully ex-

cluded from his rightful participation in the partnership, or (2) voluntarily ceased to be a partner. Plaintiff contends that his testimony supports the first allegation and it is clear that the father's testimony (and the testimony of the one brother who testified) supports the second allegation. We find that it is not necessary to choose between these contentions. The result is the same whether plaintiff was wrongfully excluded by the other partners or whether he voluntarily withdrew from the partnership.

The question here presented is governed by the terms of the Uniform Partnership Law, adopted by Missouri as Chapter 358, RSMo 1969, V.A.M.S. (unless otherwise specified, all statutory references are to RSMo 1969, V.A.M.S.). Section 358.290 defines "dissolution" of a partnership. It reads: "The 'dissolution' of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Section 358.300 provides: "On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed."

■ Section 358.310 provides for the situations which result in dissolution. Under this section, dissolution of the partnership here under consideration occurred either (1) when plaintiff was excluded from the partnership business, or (2) when plaintiff chose to cease to be a partner. Under Section 358.300, supra, the partnership continued until the winding up of the partnership affairs was completed. Such winding up has never been completed. Under Section 358.380, plaintiff had a right to receive his net interest in the partnership upon the winding up of the affairs. He has never received such interest.

■ Instead of winding up the affairs of the partnership, two of the partners (the father and mother) assigned the business of the partnership to two other partners (William and Robert) who chose to continue the business without winding up the affairs of the partnership. In such circumstances, Section 358.410 protects the interests of the creditors of the partnership, and Section 358.420 constitutes one in the position of the plaintiff herein, a creditor as to the amount of his interest in the partnership on the date of dissolution, and where, as here, the partnership business is continued, he has a right to a final winding up of the partnership business and to receive the amount of his interest in the partnership, plus interest thereon, or, at his option, to the profits attributable to the use of his interest in the continuing business.

Said Section 358.420, in pertinent part, reads as follows: "When any partner retires * * * and the business is continued [under certain named conditions] without any settlement of accounts as between him * * * and the person or partnership continuing the business, unless otherwise agreed he * * * as against such persons or partnerships may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option * * * in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership, * * *."

■ The conditions on which the foregoing Section 358.420 apply are primarily those listed in Section 358.410, which provide for the protection of creditors when the partnership is dissolved by the death or withdrawal of one or more of the partners and the partnership business is continued and not wound up. Subsection 6 of this section covers the situation where a partner is expelled. The word "expelled", as used herein, is used in a sense broad enough to include one who voluntarily withdraws. See, in this connection, Wikstrom v. Davis, infra.

The parties have not cited and our own research has not revealed any Missouri

case construing these statutes in relation to a factual situation comparable to that in the case at bar. However, our own research has brought to our attention the Oregon case of Wikstrom v. Davis, 211 Or. 254, 315 P.2d 597. The persuasive opinion of the Oregon Supreme Court in this case carefully considered the applicable provisions of the Uniform Partnership Law, as enacted by Oregon, which are practically identical with the Missouri statutes above cited. The conclusions of the court in Wikstrom support and give foundation to the conclusions we have above reached. This case points out that these conclusions as to the meaning of the statutes are compatible with common law principles which applied in the case of the death of a partner or in the case of a partner who voluntarily or involuntarily left the partnership without assigning his interest therein. See such Missouri cases as Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584; Temm v. Temm, Mo., 191 S.W.2d 629; and Schroer v. Schroer, Mo., 248 S.W.2d 617, for the common law principles applicable upon the improper exclusion of a partner from participation in the affairs of the partnership.

We, therefore, conclude that the partnership here in question was dissolved upon plaintiff's ceasing to participate therein in the spring of 1962. The exact date is not clear from the record. Under Section 358.-420, plaintiff is entitled to have his interest in the partnership determined as of the date of such dissolution. He is entitled to receive an amount equal in value to such interest as of such date, together with interest thereon, or at his option, in lieu of interest, he may choose the profits of the business attributable to the use of his interest therein in the continuing business of the partnership.

The judgment below is reversed and the cause is remanded for further proceedings in accordance with this opinion.

All concur.