Charles A. SMITH, Appellant,

v.

Jack T. KENNEBECK et al., Respondents.

No. 57370.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 10, 1973.

John J. McAtee, B. C. Drumm, Jr., Clayton, Hyman G. Stein, Charles Alan Seigel, St. Louis, for appellant.

Ronald M. Lending, James F. Koester, St. Louis, for defendants-respondents.

LAURANCE M. HYDE, Special Commissioner.

Action seeking dissolution and winding up of a partnership, accounting and determination of value of plaintiff's partnership share; asking $25,000 actual and $50,000 punitive damages. The court found that the partnership was dissolved; that there was a valid "winding up" ; that plaintiff failed to participate in the "winding up" although offered an opportunity to participate; and that plaintiff was entitled to the value of his partnership share, computed as of November 10, 1964 in the amount of $2,621.67. Plaintiff appealed prior to January 1, 1972. We reverse and remand.

Plaintiff, his brother Thomas H. Smith, Jr. and Jack T. Kennebeck began a partnership February 11, 1964, signing a partnership agreement which provided the ownership ratios for the company and that sharing of profits and losses would be "Thomas H. Smith, Jr., 50 percent, Charles A. Smith, 25 percent and Jack T. Kennebeck, 25 percent." The agreement also stated: "Thomas H. Smith, Jr. and Charles A. Smith dissolve their previous partnership agreement and forward all assets * * * to this new partnership * * *. Present actual value $15,000." Kennebeck contributed $5,000 as his share. Thus plaintiff and Kennebeck each had a one fourth interest and Thomas H. Smith, Jr. one half in the partnership with an agreed value of $20,000.

The former partnership of the Smith brothers had begun in October 1963. The new partnership of February 1964 operated until November 10, 1964 when Thomas H. Smith and Kennebeck sent a letter to plaintiff notifying him they were dissolving the partnership and had decided to form a corporation to operate the business. Plaintiff did not want the partnership dissolved and employed a lawyer. A letter was written to plaintiff's lawyer on November 30, 1964 by the lawyer representing defendants by which an offer was made for plaintiff to have the same 25% interest in the proposed corporation that he had in the partnership and a salary of $100 per week (he had been paid $75 by the partnership). Plaintiff did not accept this offer to become a stockholder and commenced this action on January 16, 1965. After the dissolution of the partnership the individual defendants continued as partners (referred to as de facto; existing without any papers or articles of partnership) until the articles of incorporation, dated December 24, 1964, were signed. Plaintiff filed this suit on January 16, 1965. The corporation created by the two remaining partners (defendants herein) continued the business of the former partnership and completed work on all orders of the partnership as the interim de facto partnership had done after November 10, 1964.

Defendants' valuation of plaintiff's partnership interest on November 10, 1964 was based on a computation made for them by Bo-Tax Co., which had been doing bookkeeping work for the partnership. This was as follows:

|  | Partners Capital Account as of 7/31/64 | Withdrawal or Additional Capital | Profit for 8/1 thru 11/10/64 | Capital Account 11/10/64 |
|---|---|---|---|---|
| Jack Kennebeck | 5174.27 | 25.00 | 1220.66 | 6369.93 |
| Thomas Smith Jr. | 2181.34 | 50.00 420.00 | 2441.30 | 4992.64 |
| Charles Smith | 1901.02 9256.63 | 175.00 170.00 | 1220.65 4882.61 | 2946.67 14309.24 |

To reduce plaintiff's stated value to $2,646.67, apparently two $150 checks were charged against him, which were claimed to have been cashed by him. Although the February partnership articles stated the value of plaintiff's interest as $5,000, the value in the Bo-Tax statement is shown as $1,901.02. Moreover, profit is only shown to November 10, 1964. However, it appears there was work then in process on previously received orders completed after that date. There was also evidence of profit on completed orders which was not included. Defendant Thomas H. Smith, Jr. testified as follows:

"Q. Did you make a full and complete inventory of everything on hand on the date of dissolution?

"A. I found out since then that we missed a few things but I felt if Charley had an objection he should hire an accountant; I felt this was something he should have to do. He was going to do it anyway, no doubt."

Defendant Smith also said he "failed to put work in process" in the records he gave the Bo-Tax accountant. One item he admitted was not included was a November 4, 1964 billing of $2,435. It also appears that there were contracts entered into before the dissolution of the partnership but on which no work had been commenced at that time but which were completed afterwards with the new corporation receiving the profits. Thomas H. Smith, Jr. said the profit on these was $1,625. None of the assets of the partnership ever went to plaintiff and after he refused settlement on the Bo-Tax figures they were transferred into the new corporation. Plaintiff had evidence of a certified public accountant, Shelton, that there were $37,350.35 billings for work in process at the time of dissolution and that the completed work, with an estimated profit of about $18,000, was not considered in determining the value of the partnership. Defendants claim this figure should be $4,645.05, the profit from which was $1,625. Defendants claimed the larger amount which Shelton found to be shown was due to failure to change their time clock during the month of November so that November billings showed October dates. They also claim plaintiff should be charged with one fourth of a $4,700 wage and hour claim filed against the partnership as well as checks he had cashed. It may be true that the individual defendants had good grounds for dissolving the partnership but they were not entitled to forfeit anything due plaintiff in accomplishing the dissolution and winding up the partnership.

■ " 'Winding up' means the administration of the assets for the purpose of terminating the business and discharging the obligations of the partnership to its members." Hurst v. Hurst, 1 Ariz.App. 227, 401 P.2d 232, 235 (1965); 60 Am.Jur.2d Partnership § 230, p. 138. In this case instead of administration of the partnership assets, it appears the two remaining partners kept all the partnership assets and continued the business, only making plaintiff an offer for his share which appears to be based on an inadequate estimate of the value of his interest.

■ The Bo-Tax Co. computation does not appear to be a proper basis for determining plaintiff's interest. The Bo-Tax agent who made it was not a certified public accountant. It was reviewed by Ernst & Ernst, who did not examine the books of the partnership, and their report shows the Bo-Tax accountant had not seen a copy of the partnership agreement which stated the value of plaintiff's capital interest at $5,000. Moreover, it states profits only through November 10, 1964 and does not consider profits on uncompleted work on contracts on hand at that time or all profits on completed contracts. The court apparently considered the Bo-Tax statement to be a "winding up" account as it found plaintiff only "entitled to the value of his share as computed on November 10, 1964." We cannot hold that was a valid "winding up" of the partnership that plaintiff was only entitled to the amount shown by it. It is insufficient not only because it · did not take into consideration the work on then existing contracts but also because the individual defendants continued the business as partners until its incorporation and then had the corporation continue it without any other offers or effort to settle plaintiff's claim for his interest. Plaintiff brought this action, in less than a month after defendants' articles of incorporation were signed. Plaintiff asked, among other relief sought, that the court wind up the partnership by appointment of a receiver. See § 358.370, RSMo 1969, V.A.M.S. It is said in Crane and Bromberg, Law of Partnership (1968) § 83A: "A partner may compel liquidation after dissolution 'unless otherwise agreed.' " See § 358.370. This was included in the relief plaintiff sought. As to "good will" which plaintiff claims should have been considered see Crane and Bromberg § 84; see also Rowley on Partnership §§ 8.1 D., 47.0 2.; 60 Am.Jur.2d Partnership § 85, p. 14.

We note the partnership agreement provided: "No partner or partners may dispose of his or their share of the company without first notifying the other partners or partner in writing of the disposition intentions and still may not without first gaining the written permission to do so by the other existing partner or partners. In addition, no partner or partners may dispose of his or their share without granting the other partner or partners a 90 day option period in which to buy the available share or shares according to the value thereof at the time of the disposition notice."

Compliance with these provisions does not appear, although the defendants' partners' shares were disposed of to a corporation, less than two months after notice of dissolution.

■ Since our view is that the evidence fails to show there ever was a valid winding up of the partnership but instead shows a continuation of the business without plaintiff's consent, plaintiff's rights were as stated in Crane and Bromberg Law of Partnership § 86: "The situation changes if the business is not wound up, but continued, whether with or without agreement. In either case, the noncontinuing partner (or his representative) has a *first election* between two basic alternatives, either of which can be enforced in an action for an accounting. He can force a liquidation, taking his part of the proceeds and thus sharing in profits and losses after dissolution. Alternatively, he can permit the business to continue (or accept the fact that it has continued) and claim as a credi-

tor (though subordinate to outside creditors) the value of his interest at dissolution. This gives him a participation in all values at dissolution, including asset appreciation and good will, and means he is unaffected by later changes in those values. If he takes the latter route, he has a *second election* to receiver in addition either interest (presumably at the local legal rate) or profits from date of dissolution."

In a recent Illinois case, Polikoff v. Levy, 132 Ill.App.2d 492, 270 N.E.2d 540, 547 (1971), involving dissolution of a joint venture which the court held was governed by substantially the same rules which govern a partnership, it was said: "In an accounting on dissolution of a partnership or co-venture, the same type of account is required as that of a trustee. The account should list all receipts and disbursements made and the original vouchers, bills and cancelled checks should be tendered or available for inspection to support the items listed. It should include a listing of original contributions and current assets and liabilities." No such accounting was made or offered in this case and the evidence shows the Bo-Tax figures were inadequate to be the kind of accounting required.

In Rouw v. Arts, 174 Ark. 79, 294 S.W. 993 (1927), the court said of a claim by partner as to the amount due him on dissolution of a partnership: "Appellant bases his action very largely, if not almost entirely, upon an audit made by Gilbertson & Co., Oklahoma certified public accountants. This audit was made at the instance of appellant, and without the knowledge or consent of appellee, and the result of this audit would therefore not be binding on him unless it is otherwise established to be correct by competent proof."

In this case, it cannot be held that the Bo-Tax statement was established as correct because of the items and matters admitted to have been omitted from consideration in making it.

In the recent case of Schoeller v. Schoeller, 465 S.W.2d 648 (Mo.App.1971), the court said: "Instead of winding up the affairs of the partnership, two of the partners (the father and mother) assigned the business of the partnership to two other partners (William and Robert) who chose to continue the business without winding up the affairs of the partnership. In such circumstances, Section 358.410 protects the interests of the creditors of the partnership, and Section 358.420 constitutes one in the position of the plaintiff herein, a creditor as to the amount of his interest in the partnership on the date of dissolution, and where, as here, the partnership business is continued, he has a right to a final winding up of the partnership business and to receive the amount of his interest in the partnership, plus interest thereon, or, at his option, to the profits attributable to the use of his interest in the continuing business."

■ Although defendants offered plaintiff an interest in the corporation equal to his interest in the partnership he had *no* obligation to accept it and his refusal did not affect his right to have the partnership properly wound up. It certainly appears that there was work in process and orders on hand as well as some completed orders which were not taken into consideration in determining the amount of plaintiff's interest made by the Bo-Tax statement; and this was the only basis for the amount offered plaintiff for his interest and found by the court to be the amount due him. Therefore, we must hold there was no valid winding up of the partnership and that the true value of plaintiff's interest must be determined.

Reversed and remanded.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.