Joyce E. MEYER, Appellant,

v.

Don K. LOFGREN and Lofgren and Company, P.C., Respondent.

Nos. WD 52282, WD 52428.

Missouri Court of Appeals, Western District.

April 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 1997.

Application to Transfer Dismissed Aug. 19, 1997.

Stephen Wayne Nichols, Kansas City, for Appellant.

Kevin J. Driscoll, Kansas City, for Respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal and cross-appeal from a judgment in a bench-tried case for an equitable accounting upon the dissolution of an

accounting partnership. The trial court found a partnership existed between Don Lofgren (Lofgren) and Joyce Meyer (Meyer), and that the dissolution of the partnership entitled Meyer to an equitable accounting and distribution of her partnership interest. Lofgren asserts two points on appeal.[1] He asserts that the trial court erred: 1) in finding the existence of a partnership; and 2) in failing to sustain his motion for a jury trial on the issue of whether a partnership existed between the parties. Meyer asserts two points on her cross-appeal. She asserts that the trial court erred: 1) in its accounting and distribution of her partnership interest by failing to include goodwill in its determination of the fair market value of the partnership assets at the time of dissolution; and 2) in apportioning the special master's fees.

We affirm in part and reverse in part.

### Facts

Lofgren, appellant/cross-respondent, and Meyer, respondent/cross-appellant, had known each other for a number of years before they decided in May, 1990, to merge their C.P.A. practices. At trial, Meyer testified that she and Lofgren determined to form a partnership under the name Don K. Lofgren, C.P.A. The court found that the partnership officially began on May 25, 1990. Around that time, she and Lofgren circulated announcements indicating the formation of their practice, with Meyer designated as partner in charge of personal financial planning. Meyer testified at trial that Lofgren held her out to third parties as a partner, evidenced by the business cards they gave clients and his personal introductions.

Meyer was to contribute some equipment and client files, and Lofgren was to provide office space in addition to the use of his already existing practice. Meyer also made an initial capital contribution of $5,000 on May 24, 1990, followed by another loan and her personal guarantee to establish a line of credit for the partnership. Meyer testified that although the terms of their partnership were not reduced to writing, management of the partnership was to be shared, and profits and losses were to be divided proportionately based upon their individual gross billings for the year. She later testified that since Lofgren had refused to produce accounting records, she believed that their default agreement provided for equal partnership. Lofgren and Meyer agreed that beginning in August, 1990, she was to receive a $700 draw every other week.

In late 1990, the partnership was changed to a professional corporation, to be named Lofgren & Co., P.C. Although Meyer was listed as vice-president in the incorporation documents, she was not issued any shares in the corporation to reflect her partnership interest. A few months later, in April, 1991, the relationship between Meyer and Lofgren began to deteriorate. Meyer drafted a memorandum to Lofgren concerning her perception that he was preventing her from participating in the management of the firm, and she demanded access to the accounting records. She followed the memorandum with a letter on May 14, 1991, again demanding financial information about the partnership. In late May, 1991, Lofgren directed the bank to release Meyer from her personal guarantee, and he told her that he was recasting her capital contribution as a loan. On May 21 or 22, 1991, Lofgren told Meyer that she was fired and demanded she turn over her keys.

Meyer filed her amended petition for equitable relief and damages on May 29, 1991, naming Lofgren and Lofgren & Co., P.C., as co-defendants. The parties proceeded on Meyer's claims for a mandatory injunction, for an accounting, and for restitution and unjust enrichment. Hearings were held on December 27, 1991, February 21, 1992, and July 31, 1992. The court issued an order on August 17, 1992, which found the existence of a partnership, the need for an accounting and the appointment of a special master. The special master issued three reports. The trial court had two more hearings on January 23, 1995, and February 10, 1995. On September 11, 1995, the court issued its final judgment. Incorporating its August 17,

---

1. Lofgren designated in his brief four points relied on. However, Points II and III, as he admitted in oral argument, are not claims of error, but

responses to the two points Meyer raised on her cross-appeal.

1992, order, the court found the partnership interests to be divided equally between Lofgren and Meyer. It held that Meyer should be returned her $5,000 capital contribution, as well as $38,708.97, which represented one-half of the value of the partnership at the time of dissolution. Finally, the court entered judgment in favor of the special master against Meyer and Lofgren, jointly and severally, in the amount of $13,500.00. Both Meyer and Lofgren appeal from the judgment.

## Standard of Review

Appellate review of a court-tried civil case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Cunningham v. Hughes*, 889 S.W.2d 864, 866 (Mo. App.1994). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Zumalt v. Boone County*, 921 S.W.2d 12, 14 (Mo.App.1996). The appellate court reviews the evidence in the light most favorable to the prevailing party, giving it the benefit of all reasonable inferences and disregarding the other party's evidence except as it supports the judgment. *Marro v. Daniels*, 914 S.W.2d 16, 17 (Mo.App.1995). It does not weigh the evidence and must give due deference to the trial judge in determining the credibility of witnesses. *Siragusa v. Park*, 913 S.W.2d 915, 917 (Mo.App.1996). The trial court is free to believe all, part or none of the testimony of any witness. *McLain v. Johnson*, 885 S.W.2d 345, 348 (Mo.App.1994). When the trial court does not make any specific factual findings, "the fact issues are found in accordance with result reached and the judgment must be affirmed under any reasonable theory supported by the evidence." *Siragusa*, 913 S.W.2d at 917.

## Lofgren's Appeal

### I. Existence of Partnership

In his first point, Lofgren claims that the trial court erred in finding the existence of a partnership between the parties. In support of his claim, he alleges that there was insufficient evidence from which to establish the necessary elements of a partnership, specifically, the requisite element that the parties agreed to share the profits and bear the losses of the accounting firm. We disagree.

A partnership is statutorily defined as "an association of two or more persons to carry on as co-owners a business for profit...." § 358.060.1.[2]

A partnership has been judicially defined as "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." *Stuart v. Overland Medical Center*, 510 S.W.2d 494, 497 (Mo.App.1974). The partnership agreement need not be written but may be expressed orally or implied from the acts and conduct of the parties, *Id.* at 497, with the intent of the parties serving as the primary criterion for determining whether such a relationship exists. *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo.App.1977).

*Kielhafner v. Kielhafner*, 639 S.W.2d 288, 289 (Mo.App.1982). *See Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974) (holding that "a partnership agreement may be implied from conduct and circumstances"); *see also Bernard McMenamy Contractor, Inc. v. Kitchen*, 692 S.W.2d 817, 820 (Mo.App.1985) (holding that "[a] partnership agreement may be oral or written, express or implied from the acts and the conduct of the parties"); *Fischer v. Brancato, et al.*, 937 S.W.2d 379, 382 (Mo.App.1996) (citing *Bernard*). The requisite intent to find a partnership is not the intent to form a partnership, but the intent to enter a relationship which in law constitutes a partnership. *Schreibman v. Zanetti*, 909 S.W.2d 692, 701 (Mo.App.1995); *Bernard McMenamy Contractor, Inc.*, 692 S.W.2d at 820; *Brancato*, 937 S.W.2d at 382.

Meyer had the burden of proving the existence of a partnership by clear, cogent, and convincing evidence. *Nesler v. Reed*, 703 S.W.2d 520, 523 (Mo.App.1985). The Mis-

**2.** All statutory references are to RSMo 1994, unless otherwise noted.

souri Supreme Court has construed this evidentiary standard to mean that

the court should be *clearly convinced* of the affirmative of the proposition to be proved. This does not mean that there may not be contrary evidence. The word "cogent" adds little, if anything; it means impelling, appealing to one's reason, or convincing.

*Grissum,* 505 S.W.2d at 86. Section 358.070 provides rules for determining the existence of a partnership. This section provides in pertinent part:

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such coowners do or do not share any profits made by the use of the property;

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise;

(b) As wages of an employee or rent to a landlord;

. . .

(d) As interest on a loan, though the amount of payment vary with the profits of the business; . . .

■ Although not reduced to writing, Meyer testified that on May 12, 1990, she and Lofgren met and specifically agreed to form an accounting partnership. At the firm's expense and with the agreement of Lofgren, announcements were printed and sent out announcing the fact that Meyer had joined the accounting firm of Lofgren. The announcement indicated that she was the "partner in charge of personal financial planning." Meyer also had business cards printed which indicated she was a partner of the firm. She also testified that Lofgren re-

ferred to her as a partner when talking with third persons.

Meyer testified that they agreed to share profits and losses based on percentages determined by comparing their individual gross billings for the year to the total partnership gross billings for the year. She also testified she was to receive a $700 draw every other week against year-end profits. The firm never withheld any amounts for income taxes, social security, or unemployment on these draws. Other than her draws, Meyer never received any distribution from the firm or any accounting as to the firm's or her annual gross billings. Meyer testified that the parties' agreement provided for equal interest in the partnership profits in the event there was no year-end accounting.

Meyer also testified that they agreed the parties were to share in the hiring and firing of employees, citing specific examples of this subsequently occurring. She also testified that they agreed she was to make an unspecified capital contribution to the partnership, which she made on May 24, 1990, in the amount of $5,000. Meyer testified that during the subsequent incorporation of the firm, the firm sought a line of credit of $20,000 from the Midland Bank. In this regard, she and her husband were required to put up collateral and sign personal guarantees.

From the foregoing synopsis of Meyer's testimony, which the trial court was free to believe, it is apparent the trial court had sufficient evidence to find the existence of a partnership between Meyer and Lofgren. Although Lofgren argues the absence of proof as to the necessary elements of a partnership and that the weight of the evidence is against the trial court's finding that a partnership existed, he does little other than to reargue the evidence and take issue with what evidence the trial court chose to believe. This is insufficient to cause a reversal under our standard of review.

In support of his claim that the evidence was insufficient to establish the requisite elements for the creation of a partnership, specifically, that the parties had agreed to divide the profits and bear the losses of the accounting firm, Lofgren cites us to *Brotherton*

*v. Kissinger*, 550 S.W.2d 904 (Mo.App.1977), and *Nesler*. We find these cases to be factually distinguishable from the case at bar and unpersuasive. In finding that a partnership did not exist in *Nesler*, the court keyed on the testimony of the plaintiff and found that plaintiff was to receive a percentage of profits as compensation for work performed, and that there was no evidence from which it could be found that he was to acquire ownership in the business. *Nesler*, 703 S.W.2d at 525. The court also found that there was no evidence that the plaintiff was to share the losses of the firm. *Id.* In *Brotherton*, the court found that there was no partnership to dissolve because the creation of the partnership was contingent on the occurrence of a future event, which had not occurred. Thus, the court held the partnership was not a partnership *in praesenti* subject to dissolution, but a partnership *in futuro*. *Brotherton*, 550 S.W.2d at 908.

Point denied.

## II. Failure to Grant Appellant a Jury Trial

■ In Lofgren's second point, he claims that the trial court erred in failing to grant his request for a jury trial on the issue of whether a partnership existed between the parties. Lofgren does not contest the fact that Meyer was entitled to an equitable accounting as to the accounting firm, if in fact a partnership existed between them. However, Lofgren has denied from the beginning the existence of the partnership and contends that the question of whether a partnership existed was a question which should have been presented to and decided by a jury. Thus, the issue for us to determine is whether, as a matter of law, Lofgren was entitled to have a jury decide the issue of whether a partnership existed between the parties.

The Missouri constitution provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate ..." Mo. Const. Art. I, § 22(a). However, there is no right to trial by jury in a case in equity, *State ex rel. Duggan v. Kirkwood*, 357 Mo. 325, 208 S.W.2d 257, 262 (banc 1948). Thus, [a party's] right to a jury trial depends on whether the cause is tried at law or in equity.

*State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422 (Mo. banc 1978). An action for accounting is an equitable action. *Dahlberg v. Fisse*, 328 Mo. 213, 40 S.W.2d 606, 609 (Mo.1931); *see Bossaler v. Red Arrow Corp.*, 897 S.W.2d 629, 630 (Mo.App.1995) (holding that an accounting is an equitable remedy that exists, in part, because of an inadequacy of legal remedies). Based on the alleged wrongful act of Lofgren of excluding her from the accounting partnership, Meyer could have elected to bring either an action in law for breach of contract or sue in equity for an accounting. *Pemberton v. Ladue Realty & Const. Co.*, 237 Mo.App. 971, 180 S.W.2d 766, 771 (1944). In her petition, she chose, *inter alia*, to sue for an accounting pursuant to § 358.220 of the Uniform Partnership Law.

As it pertains to Meyer's petition for an accounting, § 358.220 provides as follows: "Any partner shall have the right to a formal account as to partnership affairs: (1) If he is wrongfully excluded from the partnership business or possession of its property by its copartners; ..." § 358.220. Logically, before a trial court could order an accounting under this portion of the section, it would have to first determine that a partnership did, in fact, exist, if that issue was in dispute, as it is here. Thus, the determination of the existence of the partnership in a suit for an accounting under § 358.220 is part and parcel of the equitable proceeding. As a vital part of the equitable proceeding, this determination would be made by the trial court, with no right to a jury trial as claimed by Lofgren.

Even assuming, *arguendo*, that the existence of a partnership is a separate legal issue within the equitable proceeding, the "doctrine of equitable clean-up" would apply. The doctrine of equitable clean-up, which applies in Missouri, is "when equitable jurisdiction attaches, the court may determine the legal issues incident to the entire case." *Linville v. Wilson*, 628 S.W.2d 422 (Mo.App. 1982). *See Thornbrugh v. Poulin*, 679 S.W.2d 416, 418 (Mo.App.1984); *Shelter Mut. Ins. Co. v. Parrish*, 659 S.W.2d 315, 318

(Mo.App.1983). We find that the issue of whether a partnership existed was incidental to Meyer's claim for an equitable accounting and that the doctrine of equitable clean-up would apply allowing the trial court sitting in equity to determine the issue.

In support of his claim that he was entitled to a jury trial on the question of whether a partnership existed, Lofgren directs us to our holding in *Schreibman, supra.* In *Schreibman,* we did hold that "[w]hether the partnership existed was a question of fact for the jury." *Id.* at 699. However, *Schreibman* did not involve an equitable suit for an accounting, but was a breach of contract case tried to a jury. In fact, in *Schreibman,* we specifically held that the case was not tried as one for an accounting, and thus, it was not necessary to conduct one in order to determine damages for breach of the partnership contract. *Id.* at 699. We find *Schreibman* to be unpersuasive and can find no authority for the proposition that in a suit for an equitable accounting as to a partnership, an alleged partner denying the existence of a partnership is entitled to have a jury decide the issue of whether a partnership, in fact, existed.

Point denied.

### Meyer's Cross-appeal

### III. Failure to Include Goodwill in Fair Market Value

In Meyer's first point on her cross-appeal, she claims that the trial court erred in its valuation and award of her interest in the partnership, because the court's valuation and award did not take into account the value of the partnership's goodwill. We agree.

Section 358.310 of the Uniform Partnership Act, dealing with situations which result in the dissolution of partnerships, has been interpreted to include the unilateral expulsion of a partner, which is our situation here. *Schoeller v. Schoeller,* 465 S.W.2d 648, 654 (Mo.App.1971). Section 358.290 provides: "The 'dissolution' of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." It is un-

clear how the change of the accounting firm from a partnership to a corporation prior to the partnership being dissolved by the expulsion of Meyer would affect the equitable accounting and the valuation of Meyer's interest in the partnership at the time of dissolution. The issue was not raised by either party at trial or on appeal. In any event, the change to the corporate form without issuing shares to Meyer to reflect her partnership interest was an act of expulsion which would dissolve the partnership, just as the subsequent "lockout" of Meyer was an act of expulsion.

Section 358.300 provides: "On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed." Thus, under this section, although the partnership of the parties here was dissolved when Lofgren expelled Meyer from the accounting firm, the expulsion did not terminate the partnership, but it continued until the winding up of the partnership affairs. *Schoeller,* 465 S.W.2d at 654; *Prange v. Prange,* 755 S.W.2d 581, 588–89 (Mo.App.1987).

In the case at bar, Meyer did not immediately seek to terminate and wind up the affairs of the firm upon her expulsion. According to Lofgren, no partnership ever existed. Consequently, the business of the accounting firm continued without a "winding up of the partnership affairs." Subsequently, Meyer did file suit asking, *inter alia,* for an accounting and a valuation and distribution of her interest in the firm, or in other words, sought to wind up the partnership affairs. The phrase "winding up of partnership affairs" "means the administration of the assets for the purpose of terminating the business and discharging the obligations of the partnership to its members. *Smith v. Kennebeck,* 502 S.W.2d 290, 293[1] (Mo. 1973)." *State Auto. and Cas. Underwriters v. Johnson,* 766 S.W.2d 113, 121 (Mo.App. 1989).

Although Lofgren has denied the existence of a partnership from the time this lawsuit was commenced, he does not contest on appeal the fact that if a partnership is found to exist, Meyer is entitled to have an accounting and to receive her interest in the partner-

ship. Regardless, under § 358.380, Meyer has a right to receive her net interest in the partnership upon the winding up of the partnership affairs. *Schoeller*, 465 S.W.2d at 654. Pursuant to § 358.420, Meyer could elect to either receive her interest in the partnership valued at the time of dissolution with interest thereon from the date of dissolution or receive the profits of the firm attributable to her interest in the partnership from the date of dissolution. *Schoeller*, 465 S.W.2d at 654; *Prange*, 755 S.W.2d at 589. Meyer elected the former.

Where the partnership agreement does not specify the method of valuing a partner's interest in the partnership upon winding up of the partnership affairs, then under § 358.420, "fair market value" must be used to value the interest. *Chapman v. Dunnegan*, 665 S.W.2d 643, 649 (Mo.App.1984). Here, the partnership agreement makes no provision for the valuation of partnership interests upon the leaving of a partner. Thus, the trial court was obligated to use "fair market value" to determine Meyer's interest in the partnership to be distributed to her. In this determination, Meyer claims that the trial court was obligated to include an amount for "goodwill," in support of which, she cites *Smith v. Kennebeck*, 502 S.W.2d 290, 293–94 (Mo.1973).

In *Smith*, the court held that in determining the interest of a partner in a partnership post-dissolution, where the business was continued without a winding up of partnership affairs, the value of the interest would include asset appreciation and "goodwill." *Id.* at 293–94. We can find no contrary authority to *Smith*. And, because it is well settled that the "goodwill" of a professional practice, such as the accounting firm here, is considered property which is incident to the continuation of the practice, we find no reason to hold contrary to *Smith*. *See Hanson v. Hanson*, 738 S.W.2d 429, 434 (Mo. banc 1987) (holding that the goodwill of a professional practice is subject to division as marital property in a dissolution of marriage proceeding). Thus, unless there was a "waiver" of goodwill, as contended by Lofgren, the trial court here was obligated to

consider goodwill in its determination of Meyer's interest in the partnership.

Lofgren contends that the inclusion of goodwill in the calculation of Meyer's partnership interest was waived, citing a specific portion of the transcript. A review of this citation would seem to indicate that goodwill was waived. However, the transcript reveals at a later hearing, prior to the submission of the issue to the trial court, that Meyer expressly indicated to the trial court that she was seeking the inclusion of an amount for goodwill as part of the court's determination of fair market value. Under these circumstances, we find there was no waiver of goodwill by Meyer.

The special master included, as part of his accounting findings, valuations of goodwill for the partnership from the time of dissolution until the time of winding up of the partnership. However, the trial court was not requested to make specific findings of fact and did not make any as to goodwill. As a consequence, we cannot with any certainty determine from the record if the trial court considered and included goodwill in the amount it determined to be Meyer's interest in the partnership. Thus, we are forced to reverse and remand for consideration and findings by the trial court on this issue.

## IV. Award of Special Master's Fees

In her second point, Meyer claims that the trial court erred in ordering the parties to be "jointly and severally" liable for the fees of the special master in the sum of $13,500. The record reflects that in addition to the $13,500 awarded to the special master as fees, he had already received from Meyer and Lofgren $1,250 each, as ordered paid by the trial court on March 18, 1993. The record also reflects that Meyer has paid $1,350 towards the $13,500 award. Meyer argues that the order of the trial court in regard to the payment of special master fees is inequitable and an abuse of discretion in that she prevailed on her petition for an accounting and distribution of her partnership interest. We agree.

*Rule 68.01(a)* provides that

[e]ach circuit court in which any action is pending may appoint a master therein.

The compensation to be allowed a master shall be charged upon such of the parties, or paid out of any fund or subject matter of the action which is in the custody or control of the court, as the court may direct.

Because this rule does not treat special master's fees as court costs, which are to be taxed against the losing party, but vests the trial court with discretion in ordering their payment, we will not disturb on appeal the order of the trial court in assessing special master's fees under Rule 68.01(a), unless an abuse of discretion is shown.[3] *See Davis v. American Nat. Bank,* 672 S.W.2d 182, 184 (Mo.App.1984). There is nothing specific in the record to indicate how the trial court determined who should pay what part of the special master's fees. Deferring to the trial court, we will affirm the award of special master's fees, if it can be affirmed on any reasonable theory. *Price v. Price,* 921 S.W.2d 668, 675 (Mo.App.1996).

In determining whether the trial court abused its discretion in ordering the payment of special master's fees, we look to determine whose actions caused the fees to be generated. *See Cox v. Crider,* 721 S.W.2d 220, 224 (Mo.App.1986). Obviously, it was Lofgren's actions that caused the accounting and the dissolution resulting in Meyer's lawsuit, necessitating the appointment of the special master and his generation of fees. On this basis alone, we would reverse the order of the trial court as to the special master's fees as being an abuse of discretion.

As a further basis for reversing the trial court's order regarding special master's fees, we note the effect of the trial court in ordering the parties to be "jointly and severally" liable for the fees. Under this arrangement, Meyer conceivably could be caused to pay the whole of the $13,500 and forced to chase Lofgren for contribution. This possibility, in and of itself, renders the trial court's order inequitable and an abuse of discretion, inasmuch as it was the actions of Lofgren that necessitated this lawsuit. At the very least, under the circumstances of this case, the trial court should have equitably apportioned the fees among the parties giving credit for any amounts already paid.

## Conclusion

We affirm the judgment of the trial court finding a partnership and ordering an accounting. We reverse and remand the judgment of the trial court valuing and ordering distribution of Meyer's interest in the partnership with directions that, consistent with this opinion, the trial court enter its judgment awarding Meyer her interest in the partnership after considering and making specific findings as to whether the award should include any amount for goodwill of the partnership. We also reverse and remand the judgment of the trial court ordering Meyer and Lofgren to be jointly and severally liable for special master's fees in the amount of $13,500, with directions that, consistent with this opinion, the trial court order each party to pay his or her respective share of the special master's fees as the trial court deems equitable giving credit for amounts already paid.

All concur.

---

3. The trial court did order Lofgren to pay all the court costs of this action.