Douglas HILLME, Respondent,

v.

Brent CHASTAIN and C & H Custom Cabinets, Inc., a Missouri Corporation, Appellants.

No. 24350.

Missouri Court of Appeals,
Southern District,
Division One.

May 14, 2002.

316

J. Christopher Allen, O'Neil & Allen, Lebanon, for Appellants.

Dale L. Davis, Crouch, Davis, Lewis & Rykowski, Springfield and G. Stanley Moore, Lebanon, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Appellant, Brent Chastain, ("Chastain") appeals from the First Amended Judgment and Order Appointing Special Master rendered by the Circuit Court of Laclede County after a bench trial. The trial court found that a partnership existed between Chastain and Respondent, Douglas Hillme ("Hillme"), ordered an accounting and appointed a special master to assist in the process.[1] In his sole point on appeal, Chastain maintains there was insufficient evidence supporting the trial court's judgment finding that a partnership existed between himself and Hillme.

■■■■ "Appellate review of a judgment in a court-tried case is that established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Eul v. Beard*, 47 S.W.3d 424, 425 (Mo.App.2001). We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 426; *Murphy*, 536 S.W.2d 30 at 32. "The appellate court reviews the evidence in the light most favorable to the prevailing party, giving it the benefit of all reasonable inferences and disregarding the other party's evidence except as it supports the judgment." *Meyer v. Lofgren*, 949 S.W.2d 80, 82 (Mo.App.1997). "It does not weigh the evidence and must give due deference to the trial judge in determining the credibility of witnesses." *Id.*

A partnership is statutorily defined as "an association of two or more persons to carry on as co-owners a business for profit." § 358.060.1.[2] Statutory rules applica-ble in determining the existence of a partnership are set forth in § 358.070.

A partnership has also been judicially defined as "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." *Meyer*, 949 S.W.2d at 82 (quoting *Kielhafner v. Kielhafner*, 639 S.W.2d 288, 289 (Mo.App.1982)).

■■■■ The partnership agreement may be written, expressed orally, or implied from the acts and conduct of the parties. *Morrison v. Labor & Indus. Relations Comm'n*, 23 S.W.3d 902, 908 (Mo.App. 2000). The intent of the parties is the primary factor for determining whether such a relationship exists. *Binkley v. Palmer*, 10 S.W.3d 166, 169 (Mo.App.1999). The required intent necessary to find a partnership existed "is not the intent to form a partnership, but the intent to enter a relationship which in law constitutes a partnership." *Meyer*, 949 S.W.2d at 82.

■■■■ At trial, Hillme had the burden of proving the existence of a partnership by clear, cogent, and convincing evidence. *Morrison*, 23 S.W.3d at 907–08. The "clear, cogent, and convincing" evidentiary standard simply means that the trial court should be *"clearly convinced* of the affirmative of the proposition to be proved." *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974). "This does not mean that there may not be contrary evidence." *Id.*

■■■■ A partnership agreement may be implied from conduct and circumstances

---

1. The trial court found that that part of its judgment, as amended, with respect to the finding of the existence of a partnership, was final for purposes of appeal per Rule 74.01(b). *See* Rule 74.01(b), Missouri Court Rules (2001). Appellant, C & H Custom Cabinets, Inc., originally brought a third-party action against Hillme alleging that Hillme was indebted to the corporation. However, C & H Custom Cabinets, Inc., is not involved in the appeal of this particular claim.

2. Statutory references are to RSMo 1994.

of the parties and the parties are not required to know all the legal implications of a partnership. *Grissum,* 505 S.W.2d at 86. Partnership property that is held only in an individual name does not affect the partnership status. *Id.* at 87. The filing or non-filing of a partnership income tax return is not sufficient alone to prove or disprove the existence of a partnership. *Brotherton v. Kissinger,* 550 S.W.2d 904, 907–08 (Mo.App.1977). A voice in the management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indications of a partnership. *Arnold v. Erkmann,* 934 S.W.2d 621, 630 (Mo.App. 1996).

Viewed in a light most favorable to the judgment of the trial court as we must, *Meyer,* 949 S.W.2d at 82, the record shows that Chastain and Hillme had each worked for a period of time at Classic Cabinets, a cabinet making shop.[3] Hillme had worked there for about four years and had eight or nine years experience in cabinet making. He was in charge of the "specialty items, the mantles, the bookcases [and] gun cabinets." Chastain had also worked for the same concern and for the most part performed staining, finishing and installation work. Chastain testified that he had built cabinets on his own several years before and had worked in construction for ten years. Early in 1997, Hillme and Chastain discussed going into business together as cabinetmakers. They also had similar discussions with Chastain's spouse and Hillme's fiance at Chastain's home.

In April of 1997, Chastain and Hillme made the decision to go into business together. Hillme testified that they both agreed to divide the workload, profit, ex-

penses, and losses equally, that is on a "50/50" basis. No written partnership agreement was executed. Each drew a flat and equal amount of pay each week. According to Hillme, any money left over they agreed to let accumulate in the partnership account.

Chastain quit his job prior to Hillme terminating his employment. Hillme wrote a check for the purchase of plywood and Chastain also contributed monies for the venture. Chastain rented a building and purchased some woodworking equipment. He also negotiated the rent for the building. Both spent time cleaning the building and prepared to move into the building. Hillme purchased furnace parts to heat the building. Both contributed tools and equipment to the business. A business insurance policy was obtained. The parties named the business "C & H Custom Cabinets." The "C" stood for Chastain's last name and the "H" stood for Hillme's last name. Both had input as to the layout of the business cards, the building sign, and Yellow Pages advertisement. Each advertisement, including the business cards, set out each one's full name and home telephone number.

The record further shows that Chastain holds a bachelor's degree in accounting. They agreed that Chastain would handle the accounting and bookkeeping matters for their business. During the day-to-day operation, Chastain ran errands and applied stain and finish to cabinets. Hillme's time was generally spent building the cabinets. Chastain was also in charge of paying bills and scheduling installations. Neither one worked any set hours and the order in which work was to be done and by whom was settled by them as the need arose.

---

3. Classic Cabinets later changed its name to Classic Woodworks.

A checking account for the business was opened at "Central Bank." The name shown on their checks was "C & H Cabinets." It was Hillme's understanding that as business partners, they were both owners of the jointly-held account at the bank. Both issued checks from the account and each carried the concern's checkbook on occasion.

Title to the checking account went through several changes while they were working together during the period of mid–1997 through mid–1999. As best we glean, initially and unbeknownst to Hillme, the checking account was titled in Chastain's name doing business as C & H Custom Cabinets. Nevertheless, Hillme and Chastain's wife were given authorization to sign checks on the account. A year and a half later, again unbeknownst to Hillme, the account was changed to reflect that owners of the account were Chastain and his spouse. Hillme was not named as an account owner. Then in 1998 the account was made "payable on death" to Hillme. In time, Hillme was removed all together from the concern's checking account. Hillme testified that he remembered signing a "different" account card from the bank, but recalled Chastain telling him that the bank had made a mistake.

In 1997, Chastain and Hillme decided their business required a cargo trailer for hauling cabinets to the installation site. They discussed the purchase and both went to a vehicle dealer to select one. According to Hillme, it was his understanding that the cargo trailer was to be paid out of the partnership account. A bank loan was initially obtained for the purchase of the cargo trailer. Both Chastain and Hillme personally signed the note for the loan. Unbeknownst to Hillme title to the cargo trailer was placed in Chastain's name only. To the question, "Did you agree with Mr. Chastain that the title of this trailer would be issued in his own name, rather [than] the two of you as partners?", Hillme answered, "No." Hillme also stated that it was not until after his lawsuit had commenced that he had found out how the title to the cargo trailer was held.

Hillme further testified that in October of 1998, a 1994 Dodge pickup truck was purchased. Hillme related that funds generated by the partnership were used for this purpose and he understood that the vehicle was to be a partnership vehicle. According to Hillme, Chastain informed him that once the 1994 pickup truck was paid for, the partnership would buy Hillme a pickup truck. However, the pickup truck was not titled in the name of the business. Rather, it was titled in Chastain's name. Once again, Hillme testified it was only after the lawsuit was filed that he first learned that the pickup truck was titled solely in Chastain's name.

According to Hillme, Chastain showed him the business records for 1997 and gave Hillme tax documents for the 1997 tax year so that Hillme could file his individual return. Each of the parties claimed half of the business expenses, such as utilities, and each claimed half of the gross income. Neither one filed an IRS Partnership Form K–1.

At trial, Chastain variously claimed that Hillme was a subcontractor and then an employee. Chastain's lawyer described Hillme as an independent contractor. Significantly, Chastain's 1997 tax return did not show that he had paid Hillme either as an employee or as contract laborer. Indeed, as previously set out, for the tax year involved, Chastain split the expenses of the business with Hillme. Later, Hillme received Form 1099s from Chastain for the tax years 1998 and 1999. Hillme testified, however, that the Form 1099s held no particular significance to him.

According to Hillme, in early 1999 Chastain informed him that he would incorporate the business for tax purposes, but assured him that it would not affect their agreement. They had a limited discussion regarding the incorporation. Hillme testified that Chastain informed him that they needed to incorporate their business because of possible tax savings.

In time, the parties disagreed over Chastain's plans to build a new shop building at a cost of twenty to twenty-five thousand dollars. Hillme felt it was unwise to borrow the money for the building at that time. Because of this disagreement, Chastain built the building himself out of his personal funds.

Eventually, further disagreements over management caused Hillme to open his own cabinetmaking business some time in 1999. By then Hillme had become aware of Chastain's claims that they were not partners.

In his sole point on appeal, Chastain maintains the trial court erred in finding that a partnership existed between himself and Hillme because there was insufficient evidence to support the trial court's ruling. Chastain asserts that Hillme failed to demonstrate the necessary elements of partnership, such as, co-ownership of business assets, mutual rights of control of the business, an agreement in fact, and the right to share in profits and duty to share in losses. We disagree.

As previously related, the intent of the parties is the primary factor in determining whether a partnership exists. *Binkley*, 10 S.W.3d at 169. It is apparent that the trial court found Hillme's testimony to be more credible than that of Chastain. *Meyer*, 949 S.W.2d at 82.

While each evidentiary factor standing alone may not evince a partnership, it is clear that the combination of the following probative factors is supportive of the trial court's conclusion that a partnership was created by Chastain and Hillme in 1997.

The factors we note are the following: The name of the business was based on each party's last name. All of the advertising included each party's name and home telephone number. The day-to-day operation of the business relied on each one's specialized skills—Hillme's greater experience in cabinet making and Chastain's accounting and management skills. Each party co-signed the note for the cargo trailer. A joint checking account was originally established using the name of the business. Both parties were authorized to issue checks on the account. At one point Hillme was named a "payable at death" beneficiary of the business checking account. Additionally, Hillme had a voice in the management of the partnership. This is evidenced by his "veto" of using partnership assets for the construction of an additional shop building. Furthermore, during the first year of the partnership in 1997, each divided equally the income and expenses generated through the business. Although Chastain testified that this sharing of expenses for tax year 1997 was a "gift," it is apparent the trial court was not persuaded of the efficacy of this assertion.

We cannot say that the trial court erred in finding that a partnership existed between Chastain and Hillme. Sufficient evidence in the record supports the trial court's judgment. *Grissum*, 505 S.W.2d at 88. Point denied.

The trial court's judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.